MARCIAL RÍOS DE JESÚS, demandante y apelado, *v.* CLAUDIA LAFOSSE, demandada y apelante.

Núm. 8226.—*Sometido:* Noviembre 7, 1941. *Resuelto:* Noviembre 25, 1941.

*Dubón & Ochoteco,* abogados de la apelante; *Luis Vergne Ortiz,* abogados del apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

El 25 de noviembre de 1936, la Corte de Distrito de San Juan declaró disuelto el vínculo matrimonial existente entre el demandante y la demandada y concedió a ésta la custodia de la niña María Esther Ríos Lafosse, hija de ambos.

En agosto 26, 1939, el padre de dicha menor radicó ante la Corte de Distrito de Bayamón una solicitud de hábeas corpus, en la que pidió se dictase una orden para que la menor quedara bajo su patria potestad y cuidado. La solicitud se basó en las siguientes alegaciones:

Que a pesar de habérsele concedido la custodia de la niña, la demandada no hizo gestiones para que le fuera entregada y la dejó en poder de su padre, el demandante, hasta agosto 13, 1939, en cuya fecha la demandada, acompañada de un policía, se personó en casa del demandante y obligó a éste a entregarle la niña; que desde la fecha en que nació, la niña ha vivido bajo el cuidado de su padre, de su abuela paterna y de varias tías paternas, quienes han vivido a su lado; que la demandada no ha sentido nunca por la niña el verdadero afecto de madre, pues tan pronto se divorció se embarcó para Estados Unidos sin despedirse de su hija, sin tomarse interés por ella durante el tiempo que estuvo ausente; que la demandada no reúne las condiciones morales necesarias para poder educar debidamente a su hija; que la demandada tiene a la menor detenida y privada de su libertad, y no permite que el demandante tenga acceso a ella; que la demandada no está en condiciones económicas para poder atender debidamente a la menor; que la niña no come, está perdiendo peso, no siente afecto por la madre y se siente como una prisionera; y, por último, que el bienestar físico, intelectual y moral de la niña requiere que sea devuelta a la custodia de su padre.

Contestó la demandada y alegó:

Que al decretarse el divorcio, no teniendo ni él ni ella recursos económicos para mantener a la menor, convinieron

en que ésta quedara en poder de la abuela hasta que mejorase la situación económica del demandante; que encontrándose ahora la demandada en condiciones de poder mantener a su hija, y teniendo sobre ella el derecho de patria potestad por virtud de la sentencia de divorcio, la ha recuperado y la tiene en su residencia; que se ha hecho cargo de su hija porque ésta se hallaba en un estado de absoluto abandono; que es su propósito llevarse a la menor a New York, donde podrá ser educada y tener el afecto de su madre; que el demandante es persona de malas costumbres y con su conducta da malos ejemplos a su hija.

Celebrada la vista y oída la prueba testifical de una y otra parte, la corte inferior dictó su resolución, declarando con lugar el recurso y entregando la menor a su padre, sin perjuicio del derecho de la madre a visitarla. No conforme la demandada, apeló. Señala como errores cometidos a su juicio por el tribunal inferior, (a) haber considerado como factores determinantes de la custodia de la menor, la inclinación y apego de la niña por su padre y sus familiares; (b) haberle negado a la madre la custodia de su hija, porque aquélla proyectara trasladarse a trabajar en New York; (c) haber resuelto que no creía aconsejable cambiar el *status* de la niña, por razón de ignorar la suerte que ésta correría, en atención a que la menor ha estado en el domicilio de la madre solamente un mes; y (d) haber resuelto que el bienestar y felicidad de la menor requieren que ésta quede bajo la custodia de su padre. Consideraremos los cuatro señalamientos conjuntamente.

■■ Después de descartar, por considerarlas apasionadas, las imputaciones de conducta inmoral que recíprocamente se hicieran el demandante y la demandada, procedió la corte sentenciadora a considerar la evidencia y a formular las siguientes conclusiones:

"Ahora bien, la menor de que se trata la dejó voluntariamente la madre demandada bajo la custodia del padre peticionario mientras éste vivía en Cataño en compañía de su madre Dolores de Jesús

y de sus hermanas Carmen-Belén y Dolores Ríos, cuando la niña tenía entre siete meses y un año y medio de edad, y desde entonces y hasta el 13 de agosto de 1939 que la niña tenía ocho años y meses permaneció siempre bajo la custodia del padre, al cuidado y en la compañía de éste y de su abuela y tías paternas mencionadas. Siete años más o menos vivió la niña huérfana del calor, caricias y cuidados de la madre porque ésta así lo quiso voluntariamente. Por esto, cuando la niña alcanzó el juicio y comenzó a raciocinar conoció por madre a su abuela Dolores de Jesús y por sus hermanas a sus tías Carmen-Belén y Dolores Ríos. Durante ese tiempo la madre siempre permaneció alejada de la hija; raras veces la veía y su relación con ella era breve. Después que ella obtuvo la patria potestad y custodia de la niña a virtud del decreto de divorcio, se embarcó para Estados Unidos sin ocuparse de la custodia y cuidado de la niña, y cuando regresó, ocho meses después, tampoco lo hizo. Ahora, o sea el 13 de agosto de 1939, la madre demandada se trajo consigo a la niña con el propósito de trasladarse en su compañía a la ciudad de New York, alojarse allá en la casa de su tía Sabina Viera y trabajar en una colocación. Este propósito de la madre demandada nos parece una aventura que la niña no debe correr para su educación y mejor bienestar. Bajo el gobierno y dirección del padre y los cuidados y atención de la abuela y tías paternas, esta niña ha permanecido durante su corta vida en condiciones relativamente buenas, gozando del cariño de todos ellos, y el padre le ha prestado lo necesario para su subsistencia en forma relativamente suficiente con arreglo a sus medios y recursos de obrero de oficio; ha sido cuidada celosamente y ella, la niña, se ha sentido feliz en tal grado que se niega a separarse de ellos y permanecer al lado de la madre. No parece prudente y menos aconsejable que aquel *status* de la niña permanezca cambiado ya sea para mantenerla en el que se encuentra actualmente al lado de la madre en el poblado 'Amelia' de Guaynabo y que desconocemos porque solamente data de un mes a la fecha de la vista de este caso, ya para llevarla a New York y ponerla allí, como tiene que suceder, al cuidado de no se sabe qué persona desconocida mientras la madre trabajará separada de la niña para ganar su subsistencia y la de ésta; sobre todo cuando no tenemos duda de que los esfuerzos del padre peticionario para obtener la custodia y cuidado de la niña se deben y están inspirados en la consideración y deseos que tiene por su bienestar y felicidad.

"En vista de las circunstancias especiales del caso creemos no sentirnos obligados a dictar ninguna orden coercitiva por la que

el mero derecho legal de patria potestad de la madre pueda reconocérsele contra la inclinación manifiesta de la niña y su razonable elección para que vuelva donde se encontraba. La madre demandada renunció voluntariamente al cuidado de la niña cuando ésta estaba muy pequeñita y la dejó bajo el cuidado y gobierno del padre y de la abuela, y la consecuencia natural e inevitable ha sido que esta niña, que no conoce a otros padres o protectores, que de vez en cuando y por corto tiempo ha estado relacionada con su madre, y por unos siete años se ha apegado tanto a su padre, a su abuela y a sus tías como también éstos a ella, que ha considerado a su madre como una persona particular a quien llama Claudia y no mamá, y no quiere permanecer a su lado; entendemos que aunque ella no ha llegado a una edad de discreción legal, es lo suficientemente inteligente para que en cierto modo pueda dejársele hacer su elección en la cuestión de su convivencia que afecta tan profundamente a sus sentimientos e intereses; y habiéndola escuchado en el día de la vista y apreciando su inclinación y sentimientos estamos convencidos que no sería sino un acto de extrema crueldad espiritual dejarla desprendida del único hogar que siempre ha conocido, aun cuando sea con el propósito de mantenerla bajo el cuidado de su propia madre. Entendemos también que los intereses materiales de esta niña dejándola donde estaba antes y que es donde quiere ella permanecer estarán más seguros y mejor garantizados, pues no tenemos duda que tendría asegurado además el cuidado y custodia de su padre, la protección de sus familiares paternos, como la tuvo siempre hasta que la madre demandada la sacó del poder del padre peticionario. Véase *In re Gates,* 95 Cal. 461.

"Al considerar la cuestión del bienestar y felicidad de esta niña hemos tenido muy en cuenta la conducta del padre y de la madre hacia ella como factor importante para la determinación de su custodia; y por el resultado de toda la prueba nos parece que el medio ambiente favorable al bienestar moral y material y felicidad de la niña está en el hogar donde se encontraba antes de llevársela consigo la madre demandada, en cuyas circunstancias especialmente nos fundamos para determinar su custodia, ya que la patria potestad como el derecho de la madre a la custodia de la hija a virtud del decreto de divorcio están subordinados a la sana discreción de la corte en el ejercicio de su facultad como *parens patriae. Chabert* v. *Sánchez,* 29 D.P.R. 241; *Babá* v. *Rodríguez,* 36 D.P.R. 502; *Blanco* v. *Hernández,* 32 D.P.R. 22, y *Ex Parte Maldonado,* 42 D. P.R. 867."

Creemos innecesario hacer aquí un resumen de la prueba. La hemos examinado cuidadosamente y opinamos que ella es suficiente para justificar las conclusiones a que llegó la corte sentenciadora.

El caso de *In re Gates*, 95 Cal. 461, citado por la corte inferior, presenta una situación muy parecida a la del caso de autos. La madre de una niña de 10 años de edad alegó que su hija estaba ilegalmente en poder de un Sr. Eldridge, quien se opuso a la petición de hábeas corpus, alegando que él tenía derecho a la custodia de la niña por virtud de una orden judicial por la que se le nombró tutor de la menor. La Corte Suprema de California declaró sin lugar la petición, expresándose así:

"Los hechos revelados por la petición, la contestación, y la evidencia presentada en la vista, me han convencido de que la orden nombrando al Sr. Eldridge tutor de la niña es nula por falta de jurisdicción, y que la peticionaria es la persona que tiene derecho a su custodia. Empero, en vista de las circunstancias especiales del caso, no me creo obligado a dictar una orden coercitiva mediante la cual el mero derecho legal de la peticionaria pueda hacerse valer en contra de la manifiesta inclinación y razonable preferencia de la niña para permanecer donde ahora se encuentra. La peticionaria renunció voluntariamente la custodia de su hija cuando ésta tenía apenas un año de edad, y desde que la niña cumplió los dos años la dejó bajo el cuidado y control exclusivo del señor y de la señora Eldridge, siendo esta última hermana del padre de la niña. La natural e inevitable consecuencia ha sido que esta niñita, no conociendo otros padres o protectores, y no habiendo visto a su madre más que dos veces en cerca de nueve años, se ha apegado profundamente a su tía y tío, lo mismo que ellos a ella, y ha llegado al punto de considerar a su madre como una extraña. Aun cuando ella no ha llegado a los años de la discreción legal, es lo suficientemente inteligente para que pueda confiársele en cierto grado la elección en un asunto que afecta tan profundamente sus sentimientos y sus intereses; y habiéndola examinado privadamente, estoy convencido de que sería nada menos que un acto de crueldad arrancarla del único hogar que ella ha conocido, aun cuando fuera con el propósito

de colocarla bajo el cuidado de su propia madre. Sus intereses materiales serán protegidos dejándola donde ella está y ha elegido quedarse."

En el caso de autos se probó que la demandada abandonó el hogar de su esposo como cuatro años antes del divorcio; que el día en que abandonó el hogar, la demandada fué a ver a la abuela paterna de la niña y le dijo que fuera a recoger a la pequeña, que a la sazón tenía siete meses de nacida; que la abuela la recogió y la niña enfermó porque no teniendo a la madre para que le diese el pecho, fué necesario darle leche; que avisada la madre de que la niña había estado muy enferma con motivo del cambio de leche, ni siquiera entró a verla; que desde que se la entregó a la abuela, la demandada fué a ver a la nena de vez en cuando, pero no se ocupó más de ella.

En el citado caso *In re Gates,* supra, la contienda sobre la custodia de la niña se trabó entre la madre, que la había abandonado cuando tenía menos de un año, y los tíos, que la dieron hogar y cariño y estaban en mejores condiciones que la madre para poder seguir manteniéndola y educándola. La razón fundamental que tuvo la corte para dejar la niña en poder del tío y tutor fué que el bienestar de la niña estaría así mejor garantizado.

En *Chabert* v. *Sánchez,* 29 D.P.R. 241, la custodia de una niña menor de seis años de edad fué reclamada por el padre. La niña se encontraba en poder de personas muy estimables, quienes atendían debidamente a su bienestar, sin que dichas personas y la menor estuviesen unidos por lazo alguno de consanguinidad o afinidad. La corte de distrito denegó la solicitud de hábeas corpus. Esta Corte Suprema revocó la sentencia y devolvió el caso para ulteriores procedimientos, dejando sentada la doctrina de que "Aunque los padres tienen generalmente derecho a la custodia de sus menores hijos, tal derecho no es absoluto y una petición de hábeas corpus para obtener la custodia de un hijo menor, que es, por su naturaleza, un remedio en equidad, está dirigido a

la sana discreción del tribunal, dentro de cuya discreción el factor principal a considerar es el bienestar del menor.''

En *Blanco* v. *Hernández,* 32 D.P.R. 22, la custodia del niño fué reclamada por la madre, a quien le había sido concedida por sentencia de divorcio. El padre se apoderó del menor y la madre radicó el hábeas corpus. Se resolvió, que la presentación de la sentencia de divorcio era suficiente para establecer un caso prima facie a favor de la madre peticionaria, y que era al padre a quien incumbía probar que las circunstancias habían cambiado desde la fecha de tal sentencia. ‘La sentencia en favor de la madre fué confirmada por no haber probado el padre que el bienestar del menor estaría más garantizado si se le entregara a él su custodia.

En *Babá* v. *Rodríguez,* 36 D.P.R. 502, el padre solicitó mediante hábeas corpus la posesión de su hija legítima de 16 años de edad, quien había abandonado la casa paterna para refugiarse en la de su abuela materna. La corte inferior, tomando en consideración la conducta corrupta e impropia del padre para con su hija, resolvió que el bienestar de la niña requería que se la dejara al lado de su abuela. Al confirmar la sentencia por la cual se negó al padre la custodia de la niña, este tribunal, por voz de su Juez Asociado Sr. Wolf, se expresó así:

"El apelante mismo entabló este recurso. Si bien el juez que suscribe, en el caso *Ex parte Chabert,* 30 D.P.R. 765, expresó algunas dudas, éste es el caso llamado a disipar dudas, y ha llegado a la conclusión de que en Puerto Rico el bienestar de un niño puede ser investigado en un procedimiento de hábeas corpus entablado por el padre. No hay nada en ningún código en Puerto Rico que impida tal determinación. Un tribunal es el *parens patriae* y puede cuidar de los intereses de un niño y protegerlo. Resultaría penoso hacer que esta niña volviera al lado de su padre, aunque fuese temporalmente."

En el caso de *Ex parte Maldonado,* 42 D.P.R. 867, la sentencia de divorcio había concedido la custodia de los hijos

al padre. Por acuerdo entre las partes los hijos quedaron con la madre. Pasaron seis años sin que el padre demostrara interés alguno en el bienestar de los menores. La corte de distrito declaró sin lugar la petición de hábeas corpus radicada por el padre, y esta corte confirmó la sentencia, diciendo:

"El juez de distrito no .erró al sostener que la patria potestad y el derecho del padre a virtud del decreto de divorcio estaban igualmente subordinados a la sana discreción de la corte en el ejercicio de su facultad como *parens patriae*. (Citas.) No hubo abuso de discreción en el caso de autos."

A nuestro juicio, la corte inferior hizo buen uso de su discreción al conceder al padre la custodia de la menor. Después de considerar los hechos y circunstancias del caso, no tenemos dudas en cuanto a que la niña estará mejor cuidada por su padre, su abuela y sus tías paternas, quienes desde que tenía siete meses y hasta que les fué arrebatada por la madre le dieron albergue, alimentos y cariño. La madre, por el contrario, durante esos ocho años no demostró tener interés alguno en su hija y contribuyó con su indiferencia a que la niña la considere como una extraña, hasta el punto de preferir seguir viviendo en el hogar de su padre. Éste ha demostrado durante ocho años que es capaz de mantener y educar a su hija debidamente. En lugar de esa seguridad, la madre le ofrece una aventura, un viaje a Nueva York, donde ella espera encontrar trabajo para poder sostenerse a sí misma y a su hija.

*No encontramos justificación alguna para intervenir con la discreción de la corte inferior. La resolución recurrida debe ser confirmada.*