DR. HÉCTOR A. HOYOS NAPOLEONI y su esposa ANA MARÍA TORRES, peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE PONCE, HON. HÉCTOR RUIZ SOMOHANO, JUEZ, demandado.

Número 2413.

*Sometido:* 10 de abril de 1958. *Resuelto:* 11 de abril de 1958.

634

*Héctor Lugo Bougal, William Morales Torres, Carlos J. Irizarry Yunqué, Enrique González Velázquez, Julio Viera Morales* y *Leopoldo Tormes García*, abogados de los peticionarios; *Hon. Secretario de Justicia J. B. Fernández Badillo, Arturo Estrella, Secretario Auxiliar de Justicia* y *Alfredo Archilla Guenard, Fiscal del Tribunal Supremo*, abogados del demandado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.*

El doctor Héctor A. Hoyos Napoleoni y su esposa Ana María Torres radicaron una petición de *Hábeas Corpus* ante

---

* Esta opinión se emitió el 31 de julio de 1958.

el Tribunal Superior, Sala de Ponce, dirigida al Hon. Ramón Gadea Picó, uno de los jueces de dicha sala.

Alegaron en su petición que se encontraban ilegalmente encarcelados y privados de su libertad bajo la custodia del Alcaide de la Cárcel de Distrito de Ponce en virtud de una orden de encarcelación expedida por el Hon. Miguel A. Velázquez, Juez del Tribunal Superior de Puerto Rico, y en la cual se les imputaba la comisión de un delito de asesinato en la persona de Vicenta Ortiz Vives; que dicha encarcelación era ilegal por razón de que ninguno de dichos peticionarios había tenido participación de clase alguna con nada que le hubiera ocurrido y menos con la muerte de Vicenta Ortiz Vives, y que no existían pruebas legales que ameritaran que los peticionarios o cualquiera de ellos se encontraran privados de su libertad y que en caso de que existiera alguna prueba, la misma era insuficiente para privar de su libertad a los peticionarios. Alegaron además que la fianza de $10,000 que se había señalado a cada uno de los peticionarios para su libertad provisional resultaba excesiva.

El auto fué expedido y se señaló el día 6 de febrero de 1958 para la vista del caso. El día anterior los peticionarios solicitaron que se ordenara la citación del testigo Luis Ortiz Colón para que compareciera a la vista del caso. Así fue ordenado por el Juez Gadea Picó. El mismo día 5 de febrero los peticionarios radicaron dos mociones adicionales solicitando se ordenara la citación de otros testigos. Comparecieron entonces los fiscales oponiéndose por escrito a la solicitud sobre citación de testigos. El Juez Administrador de la Sala de Ponce, Hon. José Dávila Ortiz, dictó una resolución dejando sin efecto la orden de citación del testigo Luis Ortiz Colón, y señaló el día 6 de febrero para la vista de las mociones de los peticionarios interesando la citación de testigos.

En dicho día se discutieron las indicadas mociones y el juez las declaró sin lugar. Antes de que los fiscales procedieran a presentar prueba para establecer la existencia de causa probable para el arresto y detención de los peticionarios,

éstos solicitaron permiso del tribunal para radicar una alegación complementaria a su petición, cuya alegación en su parte esencial lee como sigue:

"Que según información y creencia de estos peticionarios cualquier declaración en poder de los fiscales incriminatorias contra estos acusados y que, digo peticionarios, y que puedan motivar la encarcelación de los mismos dichas declaraciones han sido obtenidas mediante coacción, halagos y promesas, intimidación, violencia, amenazas, cerca de esos declarantes y fraude puesto en práctica por parte de los funcionarios investigadores, esto es, se valieron de simulaciones, de engaños, haciéndoles querer, digo saber, de hechos que no habían sucedido e insinuándoles la forma y manera en que debían testificar."

El tribunal ordenó que la referida alegación complementaria se uniera al récord "a todos los fines legales pertinentes".

Procedieron entonces los fiscales a presentar su prueba, la que consistió en las declaraciones escritas y bajo juramento de los siguientes testigos: Dr. Edwin Rivera, Francisca Vives Ruber, Ramón Alberto Albizu Zambrana, Juan A. Zapata, Cándido Garay Ballonas y Luis Ortiz Colón.

La declaración del doctor Edwin Rivera es al efecto de que el día 13 de enero de 1958, y por orden del fiscal Fernando Pérez Regis practicó la autopsia en el cadáver de Vicenta Ortiz Vives, llegando a la conclusión de que la causa de la muerte de dicha persona fué asfixia por estrangulación.

Francisca Vives Ruber declara que es la madre de Vicenta Ortiz; que la última vez que vió a su citada hija fué el día 10 de enero de 1958 como a las 10:30 de la mañana y que el día 12 del mismo mes y año, en horas de la noche, identificó el cadáver de su hija Vicenta Ortiz Vives en el Hospital de Distrito de Ponce.

Ramón Alberto Albizu Zambrana quien declara que como entre 6:00 y 6:30 de la tarde del día 12 de enero de 1958, él y su hermano Gustavo, descubrieron a una mujer tendida boca abajo en el canal de riego en el barrio Hoyo; que inmediatamente fueron a buscar al policía Zapata.

El policía Zapata declara que al ser notificado por los hermanos Albizu del hallazgo que habían hecho, se trasladó al sitio Hoyo, del barrio Coto Laurel de Ponce y al lado de un lago encontró el cadáver de una joven dentro de un canal de riego; que al sacar el cadáver notaron que tenía amarrado al cuello un cinturón y una tira; que trasladaron el cadáver al Hospital de Distrito de Ponce donde fué identificado por Francisca Vives Ruber como el de su hija Vicenta Ortiz Vives.

Cándido Garay Ballonas declara que como a las ocho y media de la noche del día 10 de enero de 1958 estando parado frente al Café Central de Ponce en la Plaza Delicias, vió cuando llegó el Dr. Héctor Hoyos Napoleoni en su carro Lincoln y paró frente al Café Central y llamó a Luis Ortiz quien montó en el carro del doctor, yéndose ambos en dicho carro.

Cuando los fiscales ofrecieron la declaración jurada de Luis Ortiz Colón, los peticionarios hicieron enérgica oposición a su admisión alegando que dicha declaración era falsa y apócrifa y que había sido obtenida mediante intimidación, amenazas y coacción sicológica. Anunciaron que el testigo Luis Ortiz Colón estaba presente y solicitaron del tribunal que oyera su testimonio oral. Alegaron que Luis Ortiz Colón declararía que su declaración prestada a los fiscales era falsa.

El tribunal denegó la solicitud de los peticionarios y admitió la declaración escrita de Luis Ortiz Colón. Este testigo declara que el día 10 de enero de 1958 el doctor Hoyos Napoleoni fué a buscarle en el carro Lincoln de él a la Línea Kofresí, donde trabaja el testigo y le invitó a entrar en su automóvil y le pidió que le hiciera un favor; que luego le llevó por la carretera de Juana Díaz y le dijo que había pasado un accidente y que le ayudara a sacar una cosa que tenía en el carro; que el testigo le dijo que sí y entonces le mandó a buscar un carro y fué a la Línea Kofresí donde cogió el carro marca Dodge, verde, tablillas P-48-813 y fue a la casa del doctor Hoyos y éste le dijo que dejara el carro allí y se fuera

con él en el Lincoln; entonces dieron una vuelta, se tomaron una cerveza y volvieron a la casa del doctor Hoyos; la esposa de él, Ana Torres, estaba esperando en el balcón y el doctor Hoyos la llamó y se montaron en el carro del testigo; entonces el doctor Hoyos le dijo que cogiera por la carretera de Juana Díaz y dirigiéndole guió hasta un sitio desolado donde hay un lago en el Barrio Coto Laurel de Ponce, llegando allí como a las once de la noche; que entonces se apearon el doctor Hoyos y su esposa, abrieron la puerta derecha del asiento de atrás del carro y sacaron el cadáver de una mujer que tiempo después resultó ser el de Vicenta Ortiz Vives, y lo echaron en un canal de riego y lo dejaron allí; que el testigo se puso a discutir con ellos porque hasta ese momento no sabía que el favor que le habían pedido era llevar un cadáver allí; que el testigo se puso muy nervioso y el doctor Hoyos y su esposa le repetían que no se apurara que a él no le iba a pasar nada porque eso no se iba a averiguar. Que regresaron a Ponce y dejó a los esposos Hoyos en su hogar; que el día 3 de febrero explicó a los fiscales lo que había pasado y que si antes no había dicho nada era porque temía que lo acusaran a él.

Terminada la prueba de los fiscales el tribunal concedió término a las partes para memoranda. En el ínterin los peticionarios recurrieron a este Tribunal y libramos un auto de *certiorari* para revisar la resolución del tribunal a quo negándole a dichos peticionarios la oportunidad de presentar el testimonio oral de Luis Ortiz Colón.

En 11 de abril de 1958 dictamos una resolución anulando la resolución recurrida y devolviendo el caso para ulteriores procedimientos. Los fundamentos de dicha resolución serían consignados más ampliamente en la opinión del Tribunal que se adoptaría y archivaría en autos oportunamente. Procedemos ahora a emitir dicha opinión.

■■ Como fundamentos de carácter procesal para sostener la negativa del tribunal a quo a admitir el testimonio oral de Luis Ortiz Colón, el fiscal de este Tribunal alega que los peticionarios no radicaron una contestación (*traverse*) a

la contestación del auto (*return*) y que "cuando el magistrado recurrido dictó la resolución que se revisa, lo único que en derecho venía obligado a considerar era el 'return' ". Después de expresar que la alegación de fianza excesiva quedó renunciada, dice el fiscal: "Siendo esto así, la petición quedó basada en el sólo fundamento de falta de causa probable, era pues, de estricta aplicación la doctrina de *Guadalupe* v. *Bravo*, 1950, 71 D.P.R. 975, aplicada correctamente por el magistrado recurrido al resolver que en un recurso de esta naturaleza los peticionarios no tienen derecho a confrontarse con los testigos cuyas declaraciones juradas sostienen la causa probable."

El art. 480 del Código de Enjuiciamiento Criminal (34 L.P.R.A., sec. 1752) dispone:

"En la vista del auto diligenciado, podrá la persona traída ante el tribunal o juez, negar o contradecir cualquiera de los hechos o acusaciones mencionados en las diligencias del auto, impugnando la suficiencia de los mismos, o alegar cualquier hecho para demostrar que su prisión o detención es ilegal, y que tiene derecho a su excarcelación. El tribunal o juez procederá sumariamente a oír las pruebas que se aduzcan contra la prisión o detención, o en favor de la misma, y decidirá sobre el asunto como lo exija la justicia del caso, teniendo amplios poderes y autoridad bastante para obligar a los testigos a comparecer ante el tribunal, o arrestarlos en el caso contrario y para ejecutar todos los demás actos y diligencias necesarios a fin de resolver con arreglo a derecho." (¹)

---

(¹) Por haber errores en la traducción de este artículo copiamos su texto en inglés:

"The party brought before the court or judge, on the return of the writ, may deny or controvert any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge. The court or judge must thereupon proceed in a summary way to hear such proof as may be produced against such imprisonment or detention, or in favor of the same, and to dispose of such party as the justice of the case may require, and have full power and authority to require and compel the attendance of witnessess, by process of subpoena and attachment, and to do and perform all other acts and things necessary to a full and fair hearing and determination of the case."

Es cierto que bajo dicho artículo, al igual que bajo su equivalente en el estatuto de California, (²) la función de la petición en un recurso de *Hábeas Corpus* es la de asegurar u obtener que el juez o la corte expida el auto, y que una vez que el auto ha sido expedido la petición ha cumplido todos sus propósitos. El auto requiere una contestación por escrito (*return*) de la persona contra quien fue expedido. Esta contestación (*return*) es la alegación que corresponde a la demanda en las acciones civiles. *Vázquez* v. *Díaz*, 63 D.P.R. 873, 876. La parte traída ante el tribunal o juez al diligenciarse el auto puede radicar una contestación (*traverse*) negando o controvirtiendo cualquiera de los hechos o materia expuesta en el "*return*", o excepcionar su suficiencia, o alegar cualquier hecho para demostrar que su prisión o detención es ilegal o que tiene derecho a su excarcelación. Esta contestación (*traverse*) es la alegación que traba la contienda en el caso. Si el "*return*" no es atacado en la forma antes indicada, mediante la correspondiente contestación (*traverse*), se considera aceptado y si es legalmente suficiente se debe declarar el auto sin lugar y devolverse el detenido a custodia. La petición puede ser considerada como la contestación al auto (*traverse*) cuando alega los hechos esenciales para sostener el caso del peticionario, mediante estipulación de las partes y aprobación de la corte. Cuando no se celebra tal estipulación la petición no debe ser considerada al determinarse la controversia envuelta en el recurso. (³) *In re Martha,*

(²) Sec. 1484 del Código Penal de California.

(³) Cuando en la petición se alega la falta de causa razonable o probable para la prisión o detención del peticionario, es deber del tribunal o juez o ante quien se ventile el recurso, ir detrás de la orden de encarcelamiento en que se basa la detención del peticionario para determinar si hay evidencia *prima facie* que establezca la existencia de causa razonable o probable para dicha detención, independientemente de que se haya radicado o no una contestación (*traverse*) al *return*. Véanse arts. 480, 481 y 483 del Código de Enjuiciamiento Criminal. (34 L.P.R.A., secs. 1752, 1753 y 1755, respectivamente); *Napoleoni* v. *El Pueblo*, 27 D.P.R. 863. Esta ha sido la práctica uniforme en los tribunales de Puerto Rico. Véanse *González* v. *Jones*, 79 D.P.R. 44, (1956); *Santos* v. *Berdecía*, 73 D.P.R. 766, (1952); *Guadalupe* v. *Bravo*, 71 D.P.R. 975 (1950); *González* v. *Rivera,*

(1954) 122 Cal.App.2d 654, 265 P.2d 527; *In re Masching*, (1953), 41 Cal.2d 530, 261 P.2d 251; *In re Egan* (1944), 24 Cal.2d 323; *In re De León* (1943), 59 Cal.App.2d 510; *In re Silverstein* (1942), 52 Cal.App.2d 725; *In re Gutiérrez* (1934), 1 Cal.App.2d 281; *In re O'Leary* (1932), 127 Cal.App. 183; *In re Delgado* (1930), 107 Cal.App. 688; *In re Application of O'Connor* (1927), 80 Cal.App. 647; *In re Collins* (1907), 151 Cal. 340; *In re Smith* (1904), 143 Cal. 368; *In re Kolb*, 60 Cal.App. 193; *In re Larabee*, 131 Cal. App. 251.

Pero el fiscal no tiene razón en el punto procesal que levanta ante nos. La enmienda a la petición, que hemos copiado anteriormente, permitida por el Juez en la vista del auto diligenciado era claramente una contestación (*traverse*) al *"return"*. Tanto por escrito como oralmente se le informó al juez sobre la falsedad del único testimonio que conectaba a los peticionarios con el delito que se les imputaba. Es verdad que cuando el Juez resolvió las mociones sobre citación de testigos, todavía no se había presentado y admitido la enmienda de referencia, pero es lo cierto que después de admitida dicha enmienda por el juez a todos los fines legales pertinentes, según éste dijo, los peticionarios insistieron una y otra vez en que se les permitiera presentar el testimonio oral de Luis Ortiz Colón. Específicamente hicieron tal soli-

71 D.P.R. 786, 787 (1950); *Rodríguez* v. *Pagán*, 67 D.P.R. 345, 346 (1947); *Vázquez* v. *Díaz*, 63 D.P.R. 873 (1944); *Ex parte Ferrá*, 61 D.P.R. 401 (1943); *Ríos* v. *Lafosse*, 59 D.P.R. 509 (1941); *Fernández* v. *Martínez*, 59 D.P.R. 548 (1941); *Ex parte Oropesa*, 55 D.P.R. 281 (1939); *Tischer* v. *Tischer*, 42 D.P.R. 168 (1931); *Ex parte Colón*, 29 D.P.R. 117 (1921); *Ex parte Alers*, 22 D.P.R. 309 (1915); *Pueblo* v. *Pillot*, 19 D.P.R. 264 (1913); *Ex parte Sierra*, 16 D.P.R. 830 (1910); *Ex parte Pinto*, 15 D.P.R. 646 (1909); *Ex parte Álvarez*, 14 D.P.R. 598 (1908); *Pueblo* v. *Rivera*, 14 D.P.R. 772 (1908); *Ex parte Thomas*, 12 D.P.R. 367 (1907); *Ex parte Hernández*, 11 D.P.R. 133 (1906); *Ex parte Barbé*, 4 D.P.R. 87 (1903). Igual práctica se sigue en California. *Ex parte Sternes*, 82 Cal. 245, 23 Pac. 38; *Ex parte Vice*, 89 Pac. 983 (1907); *Ex parte Heacock*, 97 Pac. 77 (1908); *Ex parte Sanders*, 201 Pac. 93 (1921); *Ex parte Baugh*, 164 Pac. 529, 530 (1917); *Ex parte Knudtson*, 79 Pac. 641, 642 (1905); *Eureka County Bank Habeas Corpus Cases*, 126 Pac. 655, 667 (1912); *Ex parte Show*, 113 Pac. 1062, 1066 (1910); *Ex parte Vandiveer*, 88 Pac. 993 (1906).

citud cuando los fiscales ofrecieron la declaración escrita de dicho testigo. No hay duda de que la llamada enmienda a la petición, cuyo alcance fué explicado oralmente, para que se permitiera a los peticionarios presentar prueba, contenía hechos, que de ser ciertos, demostrarían que la detención de éstos era ilegal. Puede por tanto, considerarse, que hubo una contestación (*traverse*) a la contestación del auto (*return*) y que por lo tanto, el fundamento de carácter procesal invocado por el fiscal de este Tribunal no es suficiente para sostener la orden que motiva este recurso.

■■ Pasemos ahora a considerar los méritos de la cuestión principal aquí envuelta, esto es, si en la vista del recurso de *hábeas corpus* los peticionarios tenían derecho a presentar el testimonio oral de Luis Ortiz Colón, cuya declaración jurada prestada por escrito a los fiscales, era la única que conectaba a dichos peticionarios con la comisión del delito imputádoles, para probar con el propio deponente que tal declaración era falsa.

Ya hemos visto que de acuerdo con las disposiciones del art. 480 del Código de Enjuiciamiento Criminal (34 L.P.R.A., sec. 1752), en la vista del auto diligenciado, una vez establecida la controversia por las alegaciones correspondientes, el tribunal o juez "procederá sumariamente a oir las pruebas que se aduzcan contra la prisión o detención, o en favor de la misma, y decidirá sobre el asunto como lo exija la justicia del caso, . . . . . . y para ejecutar todos los demás actos y diligencias necesarias a fin de resolver con arreglo a derecho". Sin embargo, bajo esta disposición, el juez o tribunal no debe oir o recibir prueba con el propósito de determinar si el detenido es culpable o inocente del delito que se le imputa. La inocencia o culpabilidad de un acusado debe resolverse en el juicio correspondiente y no dentro de un recurso de *hábeas corpus*. *Flores* v. *González*, 79 D.P.R. 939, 946; *Ex parte Ferrá*, 61 D.P.R. 401; *Ex parte Mercado*, 63 D.P.R. 913; *Molina* v. *Lugo, Alcaide*, 38 D.P.R. 895; *Ex parte Figueroa*, 38 D.P.R. 968; *Baigés* v. *Pueblo*, 26 D.P.R. 148; *Pueblo* v. *Pillot*, 19

D.P.R. 264; *Ex parte Rosa*, 8 D.P.R. 132. Para determinar la existencia de causa probable, que es la cuestión que se dilucida en un recurso como el presente, son admisibles en evidencia las declaraciones juradas tomadas por un fiscal o juez en el curso de la investigación preliminar de un caso. Así ha sido ya resuelto por este Tribunal. En *Guadalupe v. Bravo*, 71 D.P.R. 975, dijimos a la página 979:

"Lógicamente la existencia de causa probable parece ser la primera cuestión a considerar, pues de no existir, procedería la inmediata excarcelación del detenido, sin necesidad de considerar las demás cuestiones suscitadas."

Y a la pág. 982 continuamos:

"Sostiene, sin embargo, la peticionaria que la práctica de admitir declaraciones juradas para probar la existencia de causa probable en procedimientos de hábeas corpus es errónea porque está basada en jurisprudencia del estado de California donde en el examen preliminar el acusado tiene derecho a estar presente y a repreguntar los testigos del gobierno; y que habiendo tenido esa oportunidad es innecesario volvérsela a brindar cuando las mismas declaraciones o cualquiera de ellas fueren luego presentadas en evidencia en un procedimiento de hábeas corpus para probar la existencia de causa probable para la detención. Pero se ha resuelto por la Corte Suprema de los Estados Unidos, que la vista preliminar que existe en otras jurisdicciones no forma parte del debido procedimiento de ley. *Lem Woon v. Oregon*, 229 U. S. 586 (1913); *Palko v. Connecticut*, 302 U. S. 319 (1937). Siendo ello así, al recibirse en evidencia en este caso las declaraciones juradas para probar la existencia de causa probable, no se privó al detenido del debido procedimiento de ley, pues si dichas declaraciones son suficientes para justificar la iniciación de un proceso, sin que el detenido haya tenido la oportunidad de repreguntar los testigos en su contra, *a fortiori* deben ser suficientes para establecer la causa probable que justifique la denegación de un hábeas corpus, si las mismas *prima facie* tienden a probar la comisión del delito imputado. De lo contrario, todo acusado, mediante la radicación de un hábeas corpus, obtendría la vista preliminar que el estatuto no le concede y que como hemos visto no es parte integral del debido proceso de ley."

644

De suerte que si las declaraciones juradas tienden a probar prima facie la comisión del delito imputado, ellas serían suficientes para establecer la existencia de causa probable que justifique la denegación del hábeas corpus. En nada tenemos que rectificar esta doctrina.

 Empero, la cuestión planteada por los apelantes es que las declaraciones juradas presentadas por los fiscales son insuficientes para establecer la causa probable, una vez se produzca en corte el testimonio oral de Luis Ortiz Colón repudiando todo lo que él había declarado a los fiscales. Repudiada así la declaración jurada por el propio deponente Ortiz Colón, quedaría roto el eslabón principal de la prueba que presentaron los fiscales para conectar a los peticionarios con la muerte de Vicenta Ortiz. Por lo tanto, la probabilidad de que la declaración jurada prestada por Ortiz Colón a los fiscales, sirviera de base razonable para una convicción de los peticionarios, dejaría de existir. Esto es así porque en la celebración del juicio correspondiente por el delito imputado a los peticionarios, los fiscales no podían utilizar, como prueba directa de cargo, la declaración jurada de Ortiz Colón sino que tenían que sentar en la silla testifical al propio Ortiz Colón, cuyo testimonio, una vez éste hubiera repudiado su primera declaración jurada, en nada ayudaría a sostener el caso de El Pueblo.

En *Ex parte Salvá*, 41 D.P.R. 27, dijimos que "Cuando, para los fines de una convicción, un eslabón esencial en la cadena de evidencia queda totalmente destruído y no existe posibilidad de tal convicción, procede el auto de hábeas corpus." La negativa del tribunal a quo a recibir el testimonio oral de Luis Ortiz Colón, privó a los peticionarios de demostrar con prueba irrefutable, que un eslabón esencial en la cadena de evidencia que los fiscales presentaron para sostener la causa probable había quedado totalmente destruído. La detención de los peticionarios subsiguiente a la vista del recurso de hábeas corpus, una vez eliminada la declaración jurada de Luis Ortiz Colón después que éste la repu-

diara, violaba el derecho constitucional de dichos peticionarios a no ser privado de su libertad a menos que exista causa probable para ello apoyada en juramento o afirmación.([4]) Bajo las disposiciones del ya citado art. 480 del Código de Enjuiciamiento Criminal, el juez que entendió en la vista del recurso de hábeas corpus, debió hacer una completa investigación de los hechos denunciados por los peticionarios y en su consecuencia debió admitir el testimonio oral de Luis Ortiz Colón para decidir el asunto como lo exigía la justicia del caso. Esto no significa que en un recurso de hábeas corpus sea admisible prueba para contradecir las declaraciones juradas que sostienen la causa probable, ni que sea misión de la corte o juez dirimir conflictos en la prueba o pasar sobre la credibilidad de testigos pues ello corresponde únicamente al jurado o juez que juzgue a los acusados. Lo que estamos sosteniendo es que bajo los hechos específicos de este caso, a los cuales limitamos el alcance de esta opinión, los peticionarios tenían derecho a demostrar, por los medios que ofrecieron al juez, que la única declaración que les conectaba con la comisión de un delito, había dejado de tener efecto incriminatorio y que en su consecuencia, dicha declaración no podía ser considerada a los fines de determinar la existencia de causa probable.([5])

---

([4]) Véase Sección 10 de la Constitución del Estado Libre Asociado de Puerto Rico.

([5]) Estando pendiente de resolución este recurso de *certiorari* el Ministerio Público presentó en corte una acusación por asesinato contra los peticionarios, sin que se incluyera al dorso de dicha acusación el nombre de Luis Ortiz Colón como uno de los testigos de cargo. Por ese solo hecho la declaración jurada de dicho Luis Ortiz Colón no perdió su eficacia jurídica para sostener la existencia de causa probable. La ley no obliga al Ministerio Público a presentar toda la prueba que tiene en su poder contra un acusado para sostener la existencia de causa probable en un recurso de hábeas corpus. *Ex parte Vilar*, 17 D.P.R. 842. Tampoco la ley exige que el Ministerio Público incluya al dorso de la acusación los nombres de los testigos cuyas declaraciones juradas fueron utilizadas en un recurso de hábeas corpus para sostener la existencia de causa probable. Lo que exige la ley es que al dorso de la acusación se incluya la lista de los testigos que se utilizarán contra el acusado en el juicio. Artículo 142 del Código de Enjuiciamiento Criminal. (34 L.P.R.A., sec. 301). Es obvio que la

*Por las razones expuestas dictamos la resolución de 11 de abril de 1958 anulando la resolución recurrida y devolviendo el caso para ulteriores procedimientos.*

El Juez Presidente Sr. Negrón Fernández disiente por los motivos que expone en su voto particular.*

determinación de causa probable hecha por un juez en un hábeas corpus, como la hecha por un magistrado para decretar el arresto y detención de un acusado, se basa exclusivamente en prueba que se le presenta y tiene ante sí. Que el fiscal utilice en el juicio toda o parte de esa prueba, no es cuestión con la cual puede intervenir el juez que hace la determinación de causa probable. Por lo tanto la declaración escrita de Ortiz Colón solamente perdía su eficacia jurídica para sostener la causa probable, si quedaba probado, con el testimonio oral del propio testigo, que dicha declaración jurada era falsa.

