RAMONA MEDINA CARDONA y su hijo JUAN RAMÓN MEDINA conocido por JUAN RAMÓN DE LEÓN MEDINA, demandantes y apelantes, *v.* DR. JUAN A. PONS en su carácter de Secretario de Salud de Puerto Rico y VIRGINIA P. DE COURTIER, en su carácter de Registradora Demográfica de Mayagüez, P. R., demandados y apelados.

Número   11589.

*Reasignado:* 11 de diciembre de 1957.     *Resuelto:* 17 de febrero de 1959.

1

*Gaspar Gerena Brás,* abogado de los apelantes; *Hiram Cancio, Secretario de Justicia (José Trías Monge, ex-Secretario de Justicia,* en el alegato) y *M. Rodríguez Alberty, Procurador Auxiliar,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR SERRANO GEYLS emitió la opinión del Tribunal.

El 6 de abril de 1954, Ramona Medina Cardona solicitó de la Registradora Demográfica de Mayagüez la inscripción tardía del nacimiento de su hijo natural Juan Ramón Medina. Sometió dos declaraciones juradas en apoyo de su petición, una de ella y otra de su hijo. Seis días después la Registradora denegó la inscripción porque la solicitud no venía acompañada "de un documento creditivo que justifique el sitio y fecha de nacimiento de la persona a inscribirse". Unos meses más tarde la peticionaria y su hijo incoaron una "acción civil" ante el Tribunal Superior, Sala de San Juan contra el Secretario de Salud y la Registradora Demográfica suplicando

se les ordenara inscribir en el Registro Demográfico a Juan Ramón Medina "como hijo natural reconocido de Ramona Medina Cardona, nacido en Mayagüez, Puerto Rico, el 27 de febrero de 1923."

Se alegó en la demanda que de 1921 a 1923 Ramona Medina Cardona llevó relaciones amorosas en Mayagüez con Zacarías de León, natural de la República Dominicana, de las cuales nació un hijo que nombraron Juan Ramón, sin que fuera inscrito en el Registro Civil ni bautizado en iglesia alguna; que un año más tarde el padre lo llevó a Santo Domingo con el pretexto de que "lo conociera su familia", y nunca más regresó; que la demandante no volvió a saber de su hijo hasta que éste era mayor de edad y luego de que el padre había fallecido; que su hijo es conocido en Santo Domingo con el nombre de Juan Ramón de León Medina, pero que allá tampoco fue inscrito en registro alguno; y que los demandantes no tienen la documentación que exigían los demandados. Estos se opusieron basándose en que los demandantes tenían que someter la documentación que les había sido requerida y en que no podía ordenarse por el tribunal la inscripción tardía que se solicitaba.

En la vista desfiló únicamente la prueba de los demandantes. Ramona Medina Cardona narró los hechos alegados en la demanda, extendiéndose sobre las circunstancias del parto, la ida del padre y el niño a Santo Domingo y la manera cómo se enteró posteriormente de la existencia de su hijo. Expresó, además, que su interés era llevarse a su hijo y a la esposa y los hijos de éste a vivir a Nueva York, donde ella posee propiedades y negocios. La comadrona Cecilia González declaró que en el año 1923 había asistido a Ramona Medina en un parto, que ésta tuvo un niño al que nombraron Juan Ramón, hijo de un individuo al que llamaban "el Dominicano", y que meses más tarde se enteró por la propia madre de que el niño no había sido inscrito en el Registro Civil y que el padre se lo había llevado de Puerto Rico. Los testigos Juan Ramírez, Barbarita Rivas y Santa Toledo declararon que co-

nocían a Ramona Medina y Zacarías de León, que éstos habían vivido juntos y habían procreado un niño de nombre Juan Ramón, que el padre se lo había llevado a los pocos meses de nacido y que desde entonces la madre lo había buscado continuamente.

Los demandantes ofrecieron, además, la siguiente prueba documental: certificaciones negativas del Registro de Mayagüez y del de Santiago, República Dominicana, acreditativas de que Juan Ramón Medina, conocido por Juan Ramón de León Medina no aparece inscrito; carta de la Registradora de Mayagüez denegando la inscripción de dicha persona; declaración jurada de Ramona Medina reconociendo a su hijo Juan Ramón y exponiendo los hechos del nacimiento y la no inscripción; otras declaraciones de ella a los mismos efectos, pero utilizando los modelos del Departamento de Salud; declaración jurada de Juan Ramón Medina aceptando el reconocimiento que le hace su madre; y finalmente un certificado del Cura Párroco de la Parroquia Altagracia de la República Dominicana acreditativo del bautismo de Juan Ramón Medina, hijo natural de Ramona Medina, celebrado el día 8 de mayo de 1954. Este acto, como podrá observarse, ocurrió aproximadamente un mes después de que la Registradora de Mayagüez había denegado la inscripción tardía del nacimiento de Juan Ramón Medina.

El Tribunal Superior dictó, entonces, sentencia declarando que los demandados no habían actuado caprichosa y arbitrariamente al denegar la inscripción y que al no ofrecer los demandantes al Registro Demográfico la prueba documental exigida por la Ley núm. 37 de 21 de noviembre de 1941 (Leyes, pág. 133) y la Circular núm. 3 del Departamento de Salud de 15 de marzo de 1944, no procedía la inscripción. Por consiguiente, declaró sin lugar la demanda.

Los demandantes apelan([1]) señalando tres errores que al

---

([1]) En vista de las disposiciones del párrafo (d) de la sec. 14 de la Ley de la Judicatura, según enmendada por la Ley núm. 115 de 26 de junio de 1958 (Leyes, pág. 294) consideraremos esta apelación como un *certiorari*.

ser examinados se convierten en uno. Sostienen que el juez sentenciador, en lugar de resolver si los demandados habían o no cumplido con las disposiciones de la ley al denegar la inscripción, debió pesar la prueba que desfiló ante él y debió determinar si tal prueba era o no suficiente para decretar que Juan Ramón Medina había nacido en Puerto Rico en la fecha y sitio alegados. Debemos, por consiguiente, determinar el alcance de la intervención judicial, si alguna, en el procedimiento de inscripciones tardías de nacimiento.

Los arts. 38 y 42 de la Ley núm. 24 de 22 de abril de 1931 (Leyes, pág. 229; 24 L.P.R.A. secs. 1237 y 1301) conceden al Secretario de Salud y a sus subalternos, los encargados de los registros demográficos, la facultad de llevar a cabo la inscripción de declaraciones de nacimiento presentadas a los registros luego de transcurrido el período de diez días que el art. 17 de dicha ley fija como término ordinario. [2] En tales casos de inscripciones tardías (artículo 38) corres-

---

[2] En sus partes pertinentes dichos artículos dicen así:

Art. 38:—"Si en cualquier tiempo después del nacimiento de una persona, se necesitare una copia certificada del récord de tal nacimiento para cualquier fin, y después de examinados los archivos por el Comisionado de Sanidad [hoy Secretario de Salud] o sus representantes, apareciere que dicho nacimiento no había sido registrado de acuerdo con las disposiciones de esta Ley, el Comisionado de Sanidad [hoy Secretario de Salud] requerirá entonces inmediatamente de la persona responsable de hacer tal declaración y de presentar el certificado para su inscripción, que presente dicho certificado al Encargado del Registro del distrito correspondiente en la forma más completa posible según lo permita el tiempo que haya transcurrido desde que tuvo lugar dicho nacimiento. Con dicho certificado se archivarán aquellas declaraciones juradas u otros documentos que el Comisionado de Sanidad [hoy Secretario de Salud] juzgare necesarios y la persona responsable de la falta será procesada, según se requiere por esta Ley, si se negare a presentar dicho certificado prontamente. En los casos en que la persona responsable de presentar el certificado haya fallecido o no pueda encontrarse, la persona que solicita la copia certificada del récord puede presentar dicho certificado de nacimiento, junto con aquellas declaraciones juradas y otros documentos que solicite el Comisionado de Sanidad [hoy Secretario de Salud], los que serán archivados en el Departamento y copia certificada del certificado será expedida entonces al solicitante, previo el pago de los derechos mencionados anteriormente."

ponde al solicitante presentar al encargado del registro un certificado "en la forma más completa posible según lo permita el tiempo que haya transcurrido desde que tuvo lugar [el] nacimiento. Con dicho certificado se archivarán aquellas declaraciones juradas u otros documentos que el Comisionado de Sanidad [hoy Secretario de Salud] juzgare necesarios. . ."

Como podrá observarse, las citadas disposiciones designan a los funcionarios a quienes compete resolver si procede efectuar una inscripción tardía, pero no establecen una vista para tales propósitos ni un método mediante el cual los tribunales puedan revisar las actuaciones administrativas. La insuficiencia de estas expresiones legislativas adquiere mayor relieve cuando se les contrasta con las referentes a las inscripciones tardías de matrimonios y defunciones contenidas en el mismo art. 38 de la Ley. En estas dos últimas situaciones, cuando el matrimonio o la defunción no aparecen registrados, la parte interesada recurrirá al Tribunal Superior, en solicitud de una orden para que se proceda a la inscripción. El tribunal, luego de practicarse las pruebas, con asistencia del fiscal, dictará el auto que proceda y copia del mismo se remitirá al Comisionado de Sanidad [hoy Secretario de Salud] para fines de inscripción.[3] Los funcionarios administra-

---

Art. 42:—"*Disponiéndose*, . . . . . que cuando la persona responsable de incumplimiento de lo que dispone el artículo 17 de este título se presentare ante el Encargado del Registro con el propósito de efectuar la inscripción de un nacimiento, en cualquier tiempo después de los diez días señalados por esta Ley para la inscripción de los mismos, podrá llevarse ésta a cabo sin ulterior sanción, mediante la cancelación de un sello de rentas internas por valor de un dólar. De otro modo, toda persona que dejare de cumplir con las disposiciones de esta Ley en lo que respecta a la inscripción de nacimientos, será procesada de acuerdo con lo que en la misma se dispone y, convicta que fuere, se le impondrán las sanciones penales anteriormente citadas."

[3] El art. 31 de la Ley (24 L.P.R.A., sec. 1231) provee un procedimiento similar para los casos de adición, enmienda o rectificación de los certificados y para los casos de cambio, adición o modificación de nombres o apellidos. Además de los casos de inscripciones tardías de matrimonios y defunciones, son éstas las únicas otras dos instancias en las que la ley establece expresamente un procedimiento judicial.

tivos tienen la responsabilidad en estos casos de hacer la búsqueda inicial en sus archivos para determinar si el matrimonio o la defunción están inscritos y luego la de proceder a la inscripción si el tribunal así lo ordena. No ejercen en ningún momento, como en el caso de los nacimientos, la función de juzgar la prueba y de resolver si procede o no la inscripción.

Hemos examinado cuidadosamente la historia legislativa de estas disposiciones y las manifestaciones de los administradores sobre ellas y no hemos podido hallar explicación alguna de estas diferencias. Suponemos que el número mayor de nacimientos, las más frecuentes circunstancias en las cuales se requieren certificados de esta naturaleza y las probabilidades de que haya más omisiones en su inscripción que en las de defunciones y matrimonios, impulsaron a los legisladores a crear un procedimiento administrativo que se encargara, en primer término, del grueso de estas controversias, evitándose así recargar indebidamente a los tribunales. [4] Sean o no éstas las razones, lo cierto es que a la luz de las obvias diferencias entre estos procedimientos, establecidas por la Ley, debemos resolver que en nuestra jurisdicción no se puede acudir en primera instancia a los tribunales ordinarios en solicitud de una orden o declaración para obtener la inscripción tardía de un nacimiento.

¿Significa lo anterior que tendrán carácter final las determinaciones administrativas en estos casos? Creemos que no. La ley no dispone tal cosa específicamente ni prohíbe expresamente la revisión judicial—*López* v. *Muñoz, Gobernador*, 80 D.P.R. 4, 7–10 (1957)—y tampoco encontramos en ella indicación alguna de que fuera esa la voluntad legislativa.

---

[4] Los informes anuales del Secretario de Salud, correspondientes a los años 1949-50 a 1955-56, demuestran que el número anual de nacimientos es mayor que el total combinado de matrimonios y defunciones, y en algunas ocasiones es varias veces mayor. Idéntica situación prevalece en cuanto a los certificados que expide el Departamento.

Además, la verificación de las circunstancias de un nacimiento no es una función que por su naturaleza pueda creerse deba permanecer bajo el exclusivo dominio de los administradores, *López v. Muñoz, Gobernador*, supra, pág. 8 y autoridades allí citadas; Davis, *Administrative Law* (1951), págs. 812–867, sino por el contrario, una que es artículo corriente del quehacer judicial.

■ Una vez establecido que existe la revisión judicial en este tipo de controversias, debemos precisar su alcance. En el ya citado caso de *López*, luego de un detenido estudio del problema, resolvimos (pág. 13) que "en ausencia de disposiciones estatutarias para (*a*) una vista y decisión administrativas y (*b*) una revisión judicial limitada de aquélla"—la reclamación—"debe indefectiblemente seguir el curso corriente de una acción ordinaria en que el tribunal sentenciador oiga independientemente la prueba y llegue a sus propias conclusiones de hecho y de derecho". Al reafirmar aquí ese principio general debemos hacer reserva del caso extraordinario en el cual factores tales como el plan, propósito o historia de la ley o de algunas de sus disposiciones específicas, la naturaleza técnica o especializada de la función administrativa y en consecuencia la singular competencia de los administradores para descargarla, la debida protección de los derechos de los reclamantes mediante adecuados procedimientos administrativos, y cualesquiera otros, nos convenzan, aún en ausencia de los factores señalados en *López*, de que fue el designio de la ley limitar la revisión judicial a cuestiones de derecho y de evidencia sustancial que surjan del expediente de los procedimientos habidos ante el organismo o funcionario administrativo; *Rivera v. Benítez, Rector*, 73 D.P.R. 377 (1952); Jaffe, *Judicial Review: Question of Fact*, 69 Harv.L.Rev. 1020, 1045–1056; *Judicial Review of Administrative Adjudicatory Action Taken Without a Hearing*, 70 Harv.L.Rev. 698, 699–704 (1957); Davis, *op. cit.*, págs. 821–850. En el asunto que estamos considerando, sin embargo, es de estricta

aplicación el principio general, pues no hay un solo factor que señale hacia una revisión limitada. ([5])

■ ■ Sin embargo, las consideraciones anteriores no resuelven enteramente la controversia planteada   Tenemos que juzgar si es correcta la conclusión del juez sentenciador estableciendo que los demandados, al rechazar la inscripción, no actuaron caprichosa y arbitrariamente y sí cumpliendo con la ley y los reglamentos aplicables.   Tal juicio requiere un análisis de la legislación del país referente a inscripciones tardías de nacimiento.

La Ley núm. 61 de 9 de marzo de 1911 (Leyes, pág. 197) estableció un nuevo sistema de registro civil luego del cambio de soberanía.   Su Título II reglamentaba los nacimientos y el art. 12 fijaba un término de cuarenta días, desde aquel en que hubiese tenido lugar el nacimiento, para que las personas obligadas hicieran la declaración del mismo.   No había provisión alguna para cubrir los casos de inscripciones tardías. Al siguiente año y por medio de la Ley núm. 46 de 7 de marzo de 1912 (Leyes, pág. 88) la Asamblea Legislativa corrigió esa situación.   Aumentó el término de declaración a sesenta días (art. 12) y ordenó la inscripción de declaraciones hechas después de vencido ese plazo, pero con una penalidad de multa para la persona que hubiese cometido la falta.

La anterior legislación mantuvo su vigencia hasta 1931, cuando comenzó a regir la ya citada Ley núm. 24, que efectuaba una completa reorganización del sistema de registro civil.   Por su art. 17 ésta redujo a diez días el término para

---

([5]) Estimamos, como dijimos en *López v. Muñoz, Gobernador*, a la pág. 13, que lo más conveniente en estos casos sería que la Asamblea Legislativa, de acuerdo con las disposiciones constitucionales aplicables, estableciera expresamente la fórmula de revisión.   El producto judicial es siempre esporádico e incompleto.   Modelos legislativos valiosos se encuentran en la legislación de Luisiana (40 West's *Louisiana Statutes Annotated*, sec. 331, 1957 *Cumulative Annual Pocket Part*, pág. 12), California (40 West's *Annotated California Codes*, secs. 10500–10558, 1958 *Cumulative Pocket Part*, págs. 26–30) y Nueva Jersey (26 *New Jersey Statutes Annotated* secs. 26.8–38, 1957 *Cumulative Annual Pocket Part*, págs. 107–108).

declarar los nacimientos y por su art. 42 impuso una penalidad a los que dejaren de presentar a tiempo un certificado de nacimiento para ser debidamente registrado. Añadió, además, dicho artículo:

"*Disponiéndose,* que durante el término de un año a contar desde la fecha en que entre en vigor esta Ley, podrá inscribirse el nacimiento de todas aquellas personas mayores de diez días que no hubieran sido anteriormente inscritas, sin la sanción penal expresada y sin responsabilidad alguna para el declarante de dicho nacimiento o para el responsable de la falta. El Comisionado de Sanidad [hoy Secretario de Salud] queda por la presente encargado de dar la debida publicidad por medio de la prensa o por cualquier otro medio que crea conveniente a esta disposición, para conocimiento general; *Disponiéndose, sin embargo,* que vencido dicho término, cuando la persona responsable de incumplimiento de lo que dispone el artículo 17 de esta Ley se presentare ante el Encargado del Registro con el propósito de efectuar la inscripción de un nacimiento, en cualquier tiempo después de los diez días señalados por esta Ley para la inscripción de los mismos, podrá llevarse ésta a cabo sin ulterior sanción, mediante la cancelación de un sello de rentas internas por valor de un dólar. De otro modo, toda persona que dejare de cumplir con las disposiciones de esta Ley en lo que respecta a la inscripción de nacimientos, será procesada de acuerdo con lo que en la misma se dispone y, convicta que fuere, se le impondrán las sanciones penales anteriormente citadas."

Ésta no era, sin embargo, la única disposición sobre el asunto de inscripciones tardías. El art. 38 agregaba:

"Si en cualquier tiempo después del nacimiento de una persona, se necesitare una copia certificada del récord de tal nacimiento para cualquier fin, y después de examinados los archivos por el Comisionado de Sanidad [hoy Secretario de Salud] o sus representantes, apareciere que dicho nacimiento no había sido registrado de acuerdo con las disposiciones de esta Ley, el Comisionado de Sanidad [hoy Secretario de Salud] requerirá entonces inmediatamente de la persona responsable de hacer tal declaración y de presentar el certificado para su inscripción, que presente dicho certificado al Encargado del Registro del distrito correspondiente en la forma más completa posible se-

gún lo permita el tiempo que haya transcurrido desde que tuvo lugar dicho nacimiento. Con dicho certificado se archivarán aquellas declaraciones juradas u otros documentos que el Comisionado de Sanidad [hoy Secretario de Salud] juzgare necesarios y la persona responsable de la falta será procesada, según se requiere por esta Ley, si se negare a presentar dicho certificado prontamente. En los casos en que la persona responsable de presentar el certificado haya fallecido o no pueda encontrarse, la persona que solicita la copia certificada del récord puede presentar dicho certificado de nacimiento, junto con aquellas declaraciones juradas u otros documentos que solicite el Comisionado de Sanidad [hoy Secretario de Salud], los que serán archivados en el Departamento y copia certificada del certificado será expedida entonces al solicitante, previo el pago de los derechos mencionados anteriormente."

No hubo cambios en las disposiciones legales(6) hasta 1941 cuando se enmendó el art. 20 de la citada Ley de 1931 para que proveyese lo siguiente:

"Artículo 20.—Respecto de los recién nacidos de origen ilegítimo, no se expresará en el registro quién es el padre, a no ser que el mismo padre por sí haga la declaración del nacimiento y la de su paternidad. Lo propio se observará, en cuanto a la expresión del nombre de la madre cuando la declaración de nacimiento se hiciese sólo por el padre.

"Cuando la persona responsable de incumplimiento de lo que dispone el artículo 17 de esta Ley, se presentare ante el encargado del registro del distrito en que el nacimiento hubiere ocurrido, con el propósito de efectuar su inscripción en cualquier tiempo después de los diez (10) días señalados por la ley para la inscripción de los mismos, podrá llevarse a cabo dicha inscripción sin otro requisito adicional que la cancelación de un sello de rentas internas por valor de un dólar ($1.00) en el certificado de nacimiento, siempre que la persona cuyo nacimiento se desea inscribir, no haya cumplido cuatro años de edad; *Disponiéndose,* que en aquellos casos en que la persona cuya inscripción se solicita tenga cuatro años o más de edad, se requerirá además de la cancelación del sello de rentas internas antes mencionado, la presentación de dos o más documentos que establezcan sin lugar a dudas la fecha y sitio del nacimiento de la persona

---

(6) Véanse la Ley núm. 25 de 17 de abril de 1936 (Leyes, pág. 213) y la Ley núm. 112 de 6 de mayo de 1941 (Leyes, pág. 793).

cuyo nacimiento se desea inscribir y el nombre y sitio de nacimiento de sus padres; *Disponiéndose, además,* que el Comisionado de Sanidad [hoy Secretario de Salud] queda por la presente autorizado a dictar y poner en vigor aquellas reglas y reglamentos que juzgare necesarios para complementar lo aquí dispuesto." Ley 37 de 21 de noviembre de 1941 (Leyes, Sesión Especial, pág. 133).

No obstante, dos años más tarde (Ley núm. 117 de 12 de mayo de 1943, Leyes, pág. 345) volvió a enmendarse el citado art. 20 para eliminarle el segundo párrafo y, así, toda relación con el problema de inscripciones tardías.([7]) Esta situación fue confirmada por la Ley núm. 26 de 8 de abril de 1949 (Leyes, pág. 81) enmendatoria también del citado art. 20. Posteriormente, no ha habido cambios en dicho artículo ni en las disposiciones pertinentes de los arts. 38 y 42, ya citados.([8])

En resumen, la legislación vigente (24 L.P.R.A. secs. 1041–1302) ordena a ciertas personas hacer la declaración de un nacimiento diez días después de éste haber tenido lugar y provee luego (art. 42) que una inscripción "en cualquier tiempo" después de esos diez días "podrá llevarse a cabo" sin ulterior sanción y mediante la cancelación de un sello de rentas internas de un dólar. Agrega (art. 38) que cuando el Secretario de Salud o sus representantes comprueben que un nacimiento no ha sido registrado dentro del plazo legal requerirán a la "persona responsable" que presente al registro un certificado *"en la forma más completa posible según lo permita el tiempo que haya transcurrido desde que tuvo lugar dicho nacimiento.* Con dicho certificado se archivarán *aquellas declaraciones juradas u otros documentos* que el Comisionado de Sanidad [hoy Secretario de Salud] juzgare necesarios . . ."* (Énfasis suplido.)

---

([7]) Inexplicablemente, tanto el juez sentenciador como los abogados participantes, aplicaron a los hechos de este caso la versión del art. 20 que aprobó la Asamblea Legislativa en 1941, sin percatarse del cambio radical hecho en 1943.

([8]) La Ley núm. 188 de 2 de mayo de 1951 (Leyes, pág. 471) enmendó de nuevo el art. 38 y la Ley núm. 58 de 11 de junio de 1954 (Leyes, pág. 317) el art. 42, pero no alteraron las disposiciones aplicables al presente caso.

El 15 de marzo de 1944 el Departamento de Salud (entonces Departamento de Sanidad) envió a los registradores demográficos la Circular núm. 3 Revisada sobre Inscripciones Tardías de Nacimiento.([9])   Esta Circular describe dos tipos de inscripciones: las que llama "Inscripciones Tardías de Nacimiento," que se refieren a personas nacidas después del 22 de julio de 1931 (fecha en que comenzó a regir la vigente Ley de Registro Demográfico) y las que llama "Inscripciones Tardías de Nacimientos Especiales", que se relacionan con personas nacidas con anterioridad a esa fecha.   Se instruye a los registradores que en cuanto a las primeras requerirán "Solamente . . . la Declaración Jurada Forma US # 7-B" del Departamento, mientras que para las segundas deberán requerir "por lo menos uno" de los siguientes documentos:

1—*Récord del Hospital.*—Una copia certificada del récord del Nacimiento del Hospital.

2—*Récord del Doctor.*—Una copia certificada del récord o documentos oficiales del Facultativo que asistió al alumbramiento.

3—*Certificados Eclesiásticos.*—Certificado de Bautismo, certificado de Confirmación, o cualesquier otro documento de Iglesia debidamente certificado por el Sacerdote o Pastor de la misma.

4—*Documentos Escolares.*—Copia certificada de los documentos originales escolares donde conste la edad y fecha de Nacimiento del solicitante, sitio de nacimiento y nombre del padre según se indicó a la fecha de su ingreso a tal escuela.

5—*Póliza de Seguro.*—Certificación de una Compañía de seguro en la que se haga constar que el solicitante tiene o tuvo en dicha Compañía una póliza.   En esta Certificación deberá indicarse la fecha y sitio de su Nacimiento, así como el nombre de sus padres según se hizo constar en la solicitud presentada para tal póliza.

6—*Documentos Militares.*—Tarjeta de inscripción en el Servicio Militar Obligatorio de las Fuerzas Armadas de los Estados Unidos de América.

---

([9]) Pasamos por alto el hecho de que esta Circular está firmada por un jefe de negociado con el visto bueno de un jefe de división, pero sin que conste de ella la aprobación del Secretario de Salud.   Considerando que el apelante no presentó prueba en contrario, presumimos que se ha cumplido con el trámite regular y que dicha Circular tiene la aprobación del Secretario.   *Cf. Quiñones* v. *Galeno,* 53 D.P.R. 361, 366 (1938).

7—*Certificación de Matrimonio.*—Copia certificada de la Declaración Jurada prestada por el solicitante al momento de su matrimonio.

8—*Certificación de Nacimiento.*—Si el solicitante es padre de familia, deberá presentar copia certificada del acta de Nacimiento del hijo o hijos que haya tenido.

El 6 de julio de 1944 el Departamento promulgó un "Pliego de Instrucciones a los Registradores Demográficos sobre la Interpretación de la Circular Número Tres de Marzo 15 de 1944." Se expresa lo siguiente en dicho Pliego:

"Al hacerse uso de las facultades que confiere la Ley al Comisionado de Salud para solicitar 'Aquellas Declaraciones juradas u otros documentos que él juzgare necesario', en la inscripción de nacimientos, se asegura la autenticidad y legalidad de las inscripciones de aquellas personas mayores de edad, que por una u otra razón no fueron inscritas a su debido tiempo, de acuerdo con la Ley anterior. El interés de esta oficina es facilitar en todo lo posible las Inscripciones tardías de Nacimiento o Inscripciones Tardías Especiales de Nacimiento, siempre que se cumplan los requisitos establecidos, probando a cabalidad que la persona cuyo nacimiento se desea inscribir nació en el sitio y la fecha que indica su petición de inscripción."

Luego se mencionan otra vez los documentos que han de requerirse para las inscripciones "especiales", describiéndolos con mayor detalle y añadiendo, en los casos de certificados eclesiásticos y pólizas de seguro, el requisito de que el acto haya ocurrido por lo menos un año antes de someterse la solicitud de inscripción.

Dice, además, el Pliego de Instrucciones:

"Otras clases de documentos, como por ejemplo copia de la solicitud para obtener licencia de chófer, documentos del cargo o empleo desempeñado, o documentos de organizaciones comerciales o profesionales de las cuales el solicitante fue o es miembro, etc., puede que sean presentadas como evidencia para la inscripción tardía de nacimiento. La aceptación de estos documentos dependerá de que la fecha de origen de los mismos, sea de *un año o más* de anterioridad a la fecha de solicitud de inscripción del nacimiento, y de que los mismos hagan constar la fecha y si-

tio de nacimiento. Como quiera que en la mayoría de los casos esta evidencia documental de la cual deba dependerse para la inscripción del nacimiento no representará evidencia incontrovertible, la misma deberá ser examinada cuidadosamente y sometida a la consideración de este Negociado, antes de ser aceptada por el Registrador." (Énfasis en el original.)

Como podrá observarse, la interpretación administrativa del art. 38 consagra la necesidad absoluta de determinada prueba documental, no importa cuan débil, para que pueda inscribirse tardíamente un nacimiento que tuvo lugar antes del 22 de julio de 1931. Consideramos, por las razones que a continuación pasamos a exponer, que es esa una interpretación errónea y que la ley y la política legislativa en ella encarnada autorizan al Secretario de Salud a inscribir los citados nacimientos cuando la prueba que se le someta—no importa su índole—demuestre fehacientemente que la persona mencionada en la solicitud nació en el sitio y fecha que se indica.

La descripción de las leyes de registro civil que hemos hecho demuestra que desde 1912 a 1931 el legislador autorizó la inscripción tardía de nacimientos sin exigir otro requisito que la presentación de la solicitud correspondiente, aunque imponiendo una pequeña multa al responsable de la tardanza. En 1931 se concedió un año de gracia para tales inscripciones, eliminando la penalidad, y se aclaró que luego de vencido dicho término podría efectuarse la inscripción también sin penalidad y mediante el pago de un sello de un dólar. Coetáneamente se dispuso que en tales casos la persona responsable presentaría un certificado "en la forma más completa posible según lo permita el tiempo que haya transcurrido desde que tuvo lugar [el] nacimiento" junto con "aquellas declaraciones juradas u otros documentos que el Comisionado de Sanidad [hoy Secretario de Salud] juzgare necesario."

Esta trayectoria comprueba que la política legislativa sobre inscripciones tardías ha sido una en extremo liberal, apoyada probablemente en el criterio de que las circunstancias

sociales del pasado, producto de los primeros y difíciles años de desarrollo—medios deficientes de comunicación y transportación, analfabetismo en gran escala, insuficientes facilidades médicas, extensión del concubinato y la ilegitimidad, desconocimiento de los mecanismos de gobierno—hacían en extremo difícil para muchas personas cumplir con los requisitos de inscripción. Después de dos décadas en las cuales la simple solicitud era suficiente para obtener una inscripción tardía, el legislador, al exigir por primera vez prueba adicional, demostró estar consciente de las dificultades del problema y dispensó a los solicitantes de tener que someter una petición completa en todos los casos. El tiempo transcurrido desde que tuvo lugar el nacimiento habría de ser el criterio para juzgar la información contenida en el certificado. Nos parece que al facultar al Secretario en ese mismo artículo para exigir junto al certificado "aquellas declaraciones juradas u otros documentos que [él] juzgare necesario", es la voluntad de la ley que la gestión administrativa se haga cargo de las dificultades de prueba en estos asuntos y demande aquella que razonablemente compruebe el hecho del nacimiento y sus circunstancias esenciales, sin que esté autorizado el Secretario a exigir ciertos documentos en todos los casos, y menos en aquéllos en los cuales las declaraciones juradas prueban las circunstancias del nacimiento hasta la saciedad. Robustece esta conclusión el hecho de que se haya derogado la ley que durante los años 1941–1943 exigió taxativamente, para la inscripción tardía del nacimiento de personas mayores de cuatro años de edad, la presentación de "dos o más documentos que establezcan sin lugar a dudas la fecha y sitio del nacimiento de la persona cuyo nacimiento se desea inscribir y el nombre y sitio de nacimiento de sus padres . . ." ([10]). Esa derogación constituye una reafirmación del mandato legislativo, vigente desde 1931, que ordena utilizar medios alternativos de prueba.

---

([10]) Supra, págs. 12–13.

También encontramos apoyo para esta determinación en la circunstancia de que en los procedimientos judiciales para la inscripción tardía de matrimonios y defunciones, incorporados, como vimos anteriormente, al mismo art. 38 que cubre los nacimientos, el legislador exige que el dictamen judicial se funde en "prueba fehaciente" sin que parte de esa prueba tenga necesariamente y en todos los casos que comprender determinados documentos. No vemos razón alguna por la cual atribuir un propósito distinto a la frase "declaraciones juradas u otros documentos".

Tampoco escapa a nuestra atención el hecho de que en la lista de documentos preparada por el Departamento de Salud se incluyen algunos—solicitudes de inscripción de hijos, de pólizas de seguros y de licencias de chófer, documentos de organizaciones comerciales o profesionales—de muy dudosa eficacia probatoria. Uno de ellos, sin embargo, aparentemente bastaría para que el Departamento procediera a la inscripción tardía de un nacimiento. Por otro lado, un solicitante podría ofrecer al Departamento declaraciones juradas que describieran minuciosa y confiablemente las circunstancias de un nacimiento y vería frustrados sus deseos de inscripción por no tener uno de los documentos señalados. No creemos que esta reglamentación dé entero cumplimiento al propósito expresado en el Pliego de Instrucciones de asegurarse de "la autenticidad y legalidad de las inscripciones de aquellas personas mayores de edad, que por una u otra razón no fueron inscritas a su debido tiempo de acuerdo con la ley anterior."

Resolvemos, por consiguiente, que al amparo de los arts. 38 y 42 de la vigente Ley del Registro Demográfico, el Secretario de Salud no tiene autoridad para rechazar la inscripción tardía de un nacimiento por la única razón de que no se acompañe a la solicitud un documento de los que él exige. La solicitud puede ir acompañada únicamente de declaraciones juradas y si éstas, luego de la debida investigación por el

Secretario (art. 43 de la Ley), en caso de creerla necesaria, a su juicio, comprueban fehacientemente la existencia y circunstancias esenciales del nacimiento, es deber del Secretario ordenar la inscripción que se solicita. Desde luego, si existen uno o varios de los documentos enumerados en la Circular núm. 3, el Secretario puede exigir del solicitante que los someta, o puede él obtenerlos directamente con el fin de examinarlos junto a las declaraciones juradas y cumplir así su deber de cerciorarse de si en realidad el nacimiento tuvo lugar en Puerto Rico.[11] La negativa del Secretario a inscribir está sujeta al procedimiento de revisión judicial, que describimos anteriormente.

Procede, por consiguiente, revocar la sentencia apelada. Considerando que los demandados apoyaron su caso enteramente en las cuestiones de derecho y que por tal razón no se enfrentaron debidamente a la prueba del demandante, y que el juez sentenciador, por igual motivo, no aquilató la prueba que consta en autos, consideramos procedente devolver el caso para que se practique prueba adicional, si alguna de las partes desea ofrecerla, y para que el tribunal emita conclusiones de hecho y de derecho.

*Se revoca la sentencia del Tribunal Superior y se devuelve el caso para ulteriores procedimientos compatibles con esta opinión.*

---

[11] Por disposición expresa de la Ley (art. 38) los certificados de nacimiento, casamiento o defunción expedidos por el Secretario constituyen evidencia *prima facie*, y, por consiguiente, sujeta a contradicción, de los hechos que constan de los mismos. *Juan Bigas, Sucrs.* v. *Comisión Industrial*, 71 D.P.R. 336, 343 (1950); *Mercado* v. *American Railroad Co.*, 61 D.P.R. 228, 233 (1943). Este es también el principio aplicable en procedimientos relacionados con la ciudadanía federal. Véanse *Casares–Moreno* v. *United States*, 226 F.2d 873 (1955); *Mah Toi* v. *Brownell*, 219 F.2d 642 (1955), cert. denegado 350 U. S. 823 (1955).