José O. Ortiz Serrano, apelante, *v.* Carmelo González Rivera, Alcaide, Penitenciaría Estatal de Río Piedras, apelado.

*Número:* CE-86-88 *Resuelto:* 27 de octubre de 1992

850

852

*Ivette Aponte Nogueras*, de la *División de Apelaciones de la Sociedad para Asistencia Legal*, abogada del apelante; *Rafael Ortiz Carrión, Procurador General*, y *Vanessa Ramírez, Procuradora General Auxiliar*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El peticionario José Ortiz Serrano comenzó a cumplir el 4 de mayo de 1979 unas sentencias indeterminadas de diez (10) a treinta y un (31) años de presidio que le fueron impuestas por el Tribunal Superior de Puerto Rico, Sala de Humacao, por unos delitos de robo e infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418. El día 24 de octubre de 1983 le fue concedido al Peticionario el beneficio de libertad condicionada por la Junta de Libertad bajo Palabra, comenzando a trabajar éste inmediatamente en la ciudad de Humacao como empleado de la Squibb Manufacturing Corporation donde percibía un salario mensual aproximado de $1,000.

El día 20 de marzo de 1985, el oficial sociopenal a cargo de la supervisión del Peticionario rindió un informe a la Junta de Libertad bajo Palabra —basado el mismo en una conversación que sostuviera con la esposa de éste— donde concluía que el Peticionario se encontraba en "el uso y venta de marihuana" y que estaba teniendo serios problemas con su esposa, temiéndose que ocurriera una "tragedia en el hogar". Al otro día y con motivo de lo antes expresado, la Junta de Libertad bajo Palabra ordenó el arresto del Peticionario. La detención de éste se efectuó el mismo día de la expedición de la orden, o sea, el 21 de marzo de 1985.

La vista de revocación de la libertad condicionada fue

señalada originalmente para el día 7 de mayo de 1985. En la notificación sobre dicho señalamiento, se le informaba al Peticionario de las violaciones a las condiciones de libertad bajo palabra que se le imputaban, a saber: (1) violación a la condición número 7 por estar haciendo uso de drogas narcóticas; (2) violación a la condición número 9 por estar observando conducta impropia en la comunidad, específicamente con su esposa, y (3) violación a la condición número 10 por no estar cumpliendo con su obligación de sostener y mantener adecuadamente a sus dependientes legales.

La vista señalada para el 7 de mayo de 1985 —según todo ello surge de una minuta que recoge los procedimientos acaecidos ese día— fue suspendida por razón de que el Peticionario interesaba ser representado por un abogado de la práctica privada de la profesión que había contratado —Lcdo. Alejandro Salgado Rivera— y no por el abogado de la Sociedad para Asistencia Legal, Lcdo. Enrique Rivera Mendoza, que estaba allí presente ese día en la Junta como "abogado de turno" de la referida sociedad. Surge de dicha minuta que el licenciado Salgado Rivera, a pesar de tener conocimiento extraoficial de dicho señalamiento prefirió no comparecer a la vista por razón de no haber sido notificado con copia del señalamiento ni el Peticionario ni él personalmente.[1] La vista de revocación fue reseñalada para el día 21 de mayo de 1985.

En dicho día se celebró la vista ante el Oficial Examinador de la referida Junta, el Sr. José Grafals. Una transcripción de dicha vista consta en el expediente administrativo de la Junta que fuera elevado ante este Tribunal. De la misma surge que estuvo presente el Peticionario, su abogado el Lcdo. Alejandro Salgado Rivera, y dos (2) testigos

---

[1] Dicha situación surge por motivo de que la Junta de Libertad bajo Palabra había enviado la notificación del señalamiento a la institución penal en Humacao donde originalmente había sido ingresado el Peticionario. Este no recibió dicha notificación a tiempo por haber sido trasladado a la Penitenciaría Estatal en Río Piedras. No se le había enviado señalamiento al licenciado Rivera Salgado por razón de que éste no aparecía como abogado de récord del Peticionario en la Junta.

citados por la referida junta: el oficial sociopenal a cargo de la supervisión del Peticionario, Sr. Ángel Ravelo, y la Sra. Idalia Torres Reyes, esposa del Peticionario. Declaró el señor Ravelo que la mencionada dama había comparecido a su oficina y le había informado que éste se estaba dedicando a la venta de marihuana; que ella llevó a su oficina, como prueba de su alegación, un material que según la "experiencia" de él aparentaba ser marihuana; que ese material él no lo retuvo en su poder como tampoco hizo las gestiones para que el mismo fuera analizado por un químico de la Policía, procediendo a devolvérselo a la esposa del Peticionario; y que ésta, por último, le manifestó que el Peticionario la maltrataba de obra y de palabra y no pagaba las "cuentas de la casa".

Como segundo testigo declaró la Sra. Idalia Torres Reyes. Su testimonio fue a los efectos de que todo lo que ella le había informado al oficial sociopenal Ravelo había sido una "fabricación" suya; que el material que ella le llevó al mencionado funcionario no era marihuana sino que orégano, y que su esposo era un marido excelente que se preocupaba por ella y su familia. En otras palabras, dicha testigo aceptó haberle dicho al oficial sociopenal todo lo declarado por él pero informó que ello era totalmente falso, siendo su actuación producto de un "coraje provocado por celos".(²)

Ese mismo día 21 de mayo de 1985 el Presidente de la Junta de Libertad bajo Palabra, Lcdo. José A. Cruz Ramos, y el miembro asociado de dicha junta Lcdo. Julián O. McConnie, Jr., *autorizaron la excarcelación* del Peticionario "como medida provisional, a los fines de que pueda asegurar su empleo con la Squibb Manufacturing ...". Se apercibió al Peticionario, en la mencionada resolución, que la

---

(²) Curiosamente, la señora Torres Reyes declaró que la mejor prueba de que lo que ella había llevado ante el señor Ravelo no era marihuana lo es el hecho de que dicho oficial, en lugar de confiscar dicho material, procedió a devolvérselo. Según ella esto demuestra que ni el propio señor Ravelo le dio crédito a su declaración.

querella "no se ha adjudicado" y que su libertad bajo palabra podía ser aún revocada.

Ello no obstante, la Junta de Libertad bajo Palabra, mediante una *escueta* resolución de fecha 21 de junio de 1985, le revocó al aquí Peticionario la libertad condicionada que éste venía disfrutando desde el año 1983. La mencionada resolución fue suscrita por los miembros asociados de la Junta, los Lcdos. Enrique García García y Julián O. McConnie, Jr. En dicha resolución se concluyó, como cuestión de hecho, que el "querellado hizo uso de drogas narcóticas o estupefacientes y, en adición, su conducta en la comunidad fue impropia". Surge de la faz de la resolución antes mencionada que la misma fue notificada, entre otros, al Peticionario (a la dirección residencial que de él aparecía en la Junta), a su abogado de récord el Lcdo. Alejandro Salgado Rivera y al oficial sociopenal Ravelo. Como consecuencia de la resolución emitida se ordenó el arresto del Peticionario y su ingreso inmediato en una institución penal.

Incomprensiblemente dicha orden de arresto no fue diligenciada hasta el día 8 de octubre de 1985. Sorprende que la misma así no fuera diligenciada ya que durante todo ese período de tiempo, según ello surge de un informe de fecha 1ro de octubre de 1985 preparado por el oficial sociopenal Ravelo, el Peticionario continuó asistiendo a sus entrevistas con dicho funcionario. Procede enfatizar el hecho de que el Peticionario siempre ha sostenido que nunca recibió copia de la decisión de la Junta mediante la cual se le revocó su libertad bajo palabra. Una vez el Peticionario fue arrestado y encarcelado, éste procedió prontamente a solicitar reconsideración de la mencionada decisión, la cual fue denegada por la Junta.

El Peticionario, *por derecho propio*, radicó el día 21 de enero de 1986 ante el Tribunal Superior de Puerto Rico, Sala de San Juan, un recurso de hábeas corpus en el cual alegó, en síntesis y en lo pertinente, que su encarcelación era una ilegal y arbitraria y en violación del debido proceso

de ley. Expedido el correspondiente mandamiento, compareció el 23 de enero de 1986 el demandado Alcaide de la Penitenciaría Estatal trayendo consigo al Peticionario. La representación legal de éste le fue asignada a la Sociedad para Asistencia Legal. Dicha vista fue suspendida a petición de la defensa. Se ordenó que para la próxima ocasión se citara al Secretario de la Junta de Libertad bajo Palabra trayendo consigo el expediente del Peticionario. En el nuevo señalamiento —29 de enero de 1986— el tribunal de instancia, luego de escuchar la prueba aportada por la representación legal del Peticionario, dictó sentencia mediante la cual declaró sin lugar el recurso radicado.[3] Aun cuando dicho tribunal de instancia así no lo hizo constar en la sentencia que por escrito emitiera, dicho foro en corte abierta expresó para récord —según la minuta que recoge los procedimientos acaecidos en dicho día— que declaraba sin lugar el recurso por razón de que en el procedimiento de revocación seguido en el caso del Peticionario no se había cometido violación alguna al debido proceso de ley; esto es, que al Peticionario se le había celebrado una vista de revocación; que la Junta había emitido, en el plazo requerido, la decisión revocatoria de la libertad a prueba; y por último, que surgía de la faz de dicha decisión que la misma había sido notificada tanto al Peticionario como a su abogado de récord.

Inconforme, el Peticionario apeló ante este Tribunal. Le imputó al foro de instancia haber errado al:

> (a) ... declarar NO HA LUGAR el Auto de Habeas Corpus interpuesto, cuando de la totalidad de las circunstancias de la prueba desfilada surgió en Derecho, la detención ilegal del confinado mientras disfrutada del derecho limitado de Libertad Bajo Palabra.
> (b) ... declarar NO HA LUGAR el Habeas Corpus cuando las

---

[3] Durante la vista declaró como testigo del Peticionario el Lcdo. Enrique García García, miembro asociado de la Junta de Libertad bajo Palabra, y el custodio de récord de la Penitenciaría Estatal. El Peticionario, en adición, presentó abundante prueba documental.

actuaciones de la Honorable Junta de Libertad Bajo Palabra en el proceso de revocación efectuado por dicho Organismo, *No cumplió con los requisitos del debido proceso de Ley, al cual estaba obligado, privando así al peticionario de su libertad.* (Énfasis suplido.) Alegato, págs. 11–12.

Mediante Moción de fecha 29 de marzo de 1986, la representación legal del Peticionario *nos informó que el foro de instancia le había fijado a éste una fianza en apelación, la cual el Peticionario había prestado.* Ordenamos que se elevaran ante este Tribunal tanto los autos originales del caso como el expediente administrativo de la Junta de Libertad bajo Palabra referente al mismo. Ambas partes han radicado sus alegatos. Resolvemos.

## I

■ La Ley Núm. 118 de 22 de julio de 1974, *según la misma ha sido enmendada,* 4 L.P.R.A. sec. 1501 *et seq.,* crea una Junta de Libertad bajo Palabra con poder para *decretar* la libertad bajo palabra de cualquier persona recluída en cualquiera de las instituciones penales de Puerto Rico así como para *revocar* la misma a cualquier liberado que, por su conducta revele no estar aún preparado para beneficiarse plenamente del privilegio y el tratamiento que implica la libertad bajo palabra.[4]

■ Dicha ley establece un procedimiento para revocar los beneficios de libertad bajo palabra que cumple con los requisitos constitucionales mínimos del debido proceso de ley.

■ Mediante la Ley Núm. 2 de 26 de febrero de 1987 la Legislatura enmendó el Art. 5 de la Ley Núm. 118, ante, 4 L.P.R.A. sec. 1505, a los fines de proveer un procedimiento de revocación que satisfaciera los requisitos constitucionales mínimos del debido proceso de ley según esta-

---

[4] 4 L.P.R.A. sec. 1503.

blecidos por el Tribunal Supremo federal en los casos de *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), y *Morrissey v. Brewer*, 408 U.S. 471 (1972). El procedimiento prescrito requiere la celebración de dos (2) vistas: (1) una vista sumaria inicial para determinar si hay causa probable para creer que el liberado ha violado las condiciones de su libertad, y (2) una vista final para determinar si procede la revocación de la libertad bajo palabra. Se reconoce el derecho del liberado a notificación de las alegadas infracciones a las condiciones de la libertad bajo palabra; el derecho a comparecer y presentar evidencia a su favor; confrontar y contrainterrogar testigos adversos; el derecho a que la decisión de revocación sea tomada por un juzgador neutral e independiente y a que se hagan determinaciones escritas de los hechos hallados probados, así como de la evidencia en que la decisión se basó y las razones para revocar la libertad bajo palabra.

■ Como surge de la relación de hechos, en el presente caso la Junta de Libertad bajo Palabra ordenó el arresto del Peticionario y su ingreso en una institución penal meramente a base del informe rendido por el oficial sociopenal. La omisión, sin embargo, en que incurrió la Junta al no celebrar inmediatamente una "vista sumaria inicial" quedó subsanada al posteriormente celebrarse una vista formal de revocación ante la Junta donde el Peticionario, debidamente informado de las violaciones que se le imputaban y representado por un abogado de su selección, tuvo la oportunidad de contrainterrogar a los testigos y de presentar prueba. Véase *Maldonado Elías v.González Rivera*, 118 D.P.R. 260, 270 (1987).

■ La referida Ley Núm. 118 no provee, de manera expresa, un procedimiento para la *revisión judicial* de la decisión final de la Junta revocando la libertad bajo palabra; ello, no obstante, no hay duda de que una persona cuya libertad bajo palabra es revocada tiene derecho a que dicha decisión sea revisada judicialmente. El silencio de un

estatuto sobre el derecho a la revisión judicial de la decisión administrativa no impide la misma. En ausencia de una clara indicación de la intención de la Asamblea Legislativa de limitar el acceso a los tribunales se presume la revisión judicial. Véanse: *Bonilla v. Chardón*, 118 D.P.R. 599 (1987); *Medina v. Pons*, 81 D.P.R. 1 (1959); *López v. Muñoz, Gobernador*, 80 D.P.R. 4 (1957); *Rivera v. Benítez, Rector*, 73 D.P.R. 377 (1952). Véanse, también: B. Shwartz, *Administrative Law*, 2da ed., Boston, Ed. Little, Brown and Co., 1984, págs. 441–444; K.C. Davis, *Administrative Law Text*, St. Paul, Ed. West Publishing Co. 1959, pág, 503.

■ Así necesariamente tiene que ser en la situación que plantea el presente caso; en el mismo está en juego la libertad de un individuo. Aunque la libertad bajo palabra al igual que "[l]a libertad conferida a un convicto mediante el beneficio de sentencia suspendida no goza de la magnitud ni grado de la que disfruta un ciudadano común" por estar limitada por el cumplimiento de las condiciones fijadas por la Junta, la misma tiene un valor fundamental para el convicto que disfruta de ella, valor que es acreedor de protección constitucional. *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717, 723 (1985).

Ahora bien, ¿cuál es el recurso apropiado para revisar judicialmente la resolución de la Junta revocando la libertad bajo palabra? ¿Lo es el recurso de Hábeas Corpus o el de revisión judicial?

■ Somos conscientes del hecho de que en *Román v. Delgado*, 82 D.P.R. 598, 600 (1961), expresamos —en la nota al calce número 2— que "el hábeas corpus es el recurso procedente para determinar la legalidad del reencarcelamiento cuando se revoca dicha libertad bajo palabra, ya que evidentemente al confinado se le está restringiendo físicamente su libertad".

■ Si bien es cierto que el auto de Hábeas Corpus

puede ser solicitado por "cualquier persona que sea encarcelada o ilegalmente privada de su libertad ... a fin de que se investigue la causa de dicha privación" (⁵) y de que el mismo constituye esencialmente una encuesta que abre el propio Estado para investigar la validez de la privación de la libertad de uno de sus ciudadanos, teniendo el Estado un interés primordial en que la verdad se esclarezca, *Reynolds v. Jefe Penitenciaría*, 90 D.P.R. 373 (1964), *entendemos que por ser el mismo un remedio extraordinario su uso debe estar limitado a situaciones y casos verdaderamente excepcionales.* Ello significa que, como regla general, "tienen que agotarse todos los remedios ordinarios disponibles antes de acudirse a este recurso".(⁶) Debe recordarse que "[d]esde los albores de nuestra jurisprudencia hemos adoptado la regla general de que, *salvo 'circunstancias excepcionales'*, no se concederá el auto de hábeas corpus en sustitución de la revisión apelativa". (Énfasis suplido.)(⁷) No hay razón alguna para que dicha norma no sea igualmente aplicable a situaciones como las que hoy consideramos. Máxime si consideramos el alcance de la revisión judicial en estos casos.(⁸)

---

(⁵) Art. 469 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1741.

(⁶) F. Fumero Pugliesi, *Actualidad y futuro del auto de hábeas corpus en Puerto Rico*, XX (Núm. 1) Rev. Jur. U.I.A. 99, 107 (1985).

(⁷) Véase *Otero Fernández v. Alguacil*, 116 D.P.R. 733, 740 (1985), y casos allí citados. En dicho caso expresamos que al "determinar en qué consisten estas 'circunstancias excepcionales', *los tribunales deberán tomar en consideración, además de la disponibilidad o no de un remedio efectivo para revisar en alzada el error y evitar la continuación de la detención ilegal,* factores tales como si de las alegaciones en la petición, con referencia a hechos específicos, surge: (1) que ha habido una patente violación a algún derecho constitucional fundamental; (2) que no ha habido una renuncia válida a ese derecho, y (3) la necesidad de una vista evidenciaria". (Énfasis suplido.) Íd., págs. 740–741.

(⁸) En *Santiago Meléndez v. Rodríguez, Alguacil*, 102 D.P.R. 71, 75 (1974), confirmamos una sentencia denegando la expedición de un auto de hábeas corpus porque además de estar el peticionario en libertad bajo su propia custodia éste tenía a su disposición la Regla 64(p) y (m) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, "cuya Regla provee un remedio convencional y eficaz para plantear su alegación de prescripción y para cuestionar la determinación de causa probable".

Así también nuestra Asamblea Legislativa ha aprobado legislación restringiendo la utilización del recurso de hábeas corpus en aquellos casos en que hay otros

■ La revisión judicial de una resolución de revocación adoptada por la Junta incluye dos (2) aspectos: (1) cuestiones de derecho sustantivas y procesales, y (2) claro abuso de discreción al revocar la libertad a prueba. *Román v. Delgado*, ante, pág. 608. En otras palabras, además de los señalamientos de derecho sustantivo que tenga a bien plantear una persona a quien le haya sido revocada la libertad bajo palabra que disfrutaba, éste puede cuestionar no sólo si *el procedimiento seguido* por la Junta al revocar la libertad condicionada cumplió o no con el debido proceso de ley, sino que también puede cuestionar *la determinación en los méritos* que a esos efectos hace la Junta, ello a la luz de la prueba que desfile en la vista evidenciaria que viene obligado a celebrar dicho organismo administrativo.

■ En cuanto a este segundo aspecto, el hábeas corpus realmente no es el recurso adecuado para revisar el dictamen de la Junta revocando la libertad bajo palabra por cuanto "[l]a encuesta que sobre la legalidad de la prisión o detención lleva a cabo el juez en la vista del hábeas corpus *se circunscribe* a asegurarse de que se han seguido y observado trámites procesales correctos, ajustados al debido proceso de ley". (Énfasis suplido.) *Rabell v. Alcaides Cárceles de P.R.*, 104 D.P.R. 96, 101 (1975). Véase, además, *Otero Fernández v. Alguacil*, ante, esc. 5. *Esto es, dicho*

remedios ordinarios disponibles.

La Ley Núm. 177 de 20 de julio de 1979 añadió la Sec. 489 (b) al Código de Enjuiciamiento Criminal para disponer lo siguiente:

"El auto de *hábeas corpus* no podrá ser utilizado para rebajar la cuantía de una fianza sin antes haberse agotado el procedimiento establecido en la Regla 218 de las de Procedimiento Criminal de 1963, según enmendadas." (Énfasis suplido.) Leyes de Puerto Rico, pág. 484.

La Ley Núm. 18 de 11 de abril de 1968 enmendó el Art. 469 del Código de Enjuiciamiento Criminal para disponer lo siguiente:

"(c) Ningún juez considerará una solicitud de *hábeas corpus* presentada por un confinado recluido en virtud de sentencia final que no haya agotado el remedio provisto en la Regla 192.1 de las Reglas de Procedimiento Criminal. Cuando habiéndolo solicitado le hubiese sido denegado, el tribunal no considerará una solicitud de *hábeas corpus* a menos que aparezca que el remedio provisto por la Regla 191.1 era inadecuado o inefectivo para impugnar la validez de la detención." (Énfasis suplido.) Leyes de Puerto Rico, pág. 30.

*recurso extraordinario no debe ser utilizado para cuestionar las determinaciones de hecho que realiza la Junta, mucho menos la apreciación y adjudicación de credibilidad que de la prueba que se presenta en la vista de revocación de libertad hace dicho organismo administrativo, al punto de adjudicar credibilidad y sustituir el criterio del juez por el de la referida Junta. Cf. Rabell v. Alcaide Cárceles de P.R.*, ante.

 Por las razones antes expuestas *resolvemos* que, como regla general, el recurso adecuado para revisar una resolución de la Junta revocando la libertad condicionada a un convicto es el de revisión judicial y que salvo la existencia de circunstancias extraordinarias no estará disponible el recurso de hábeas corpus en estos casos. *Otero Fernández v. Alguacil*, ante.

 No habiéndose dispuesto en la ley que crea la Junta de Libertad bajo Palabra el procedimiento a seguirse para la revisión judicial de la decisión que dicho organismo administrativo emita, *y hasta que la Asamblea Legislativa actúe sobre el asunto*, el recurso de revisión deberá tramitarse conforme a las disposiciones pertinentes de la Ley de Procedimiento Administrativo Uniforme de Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 y ss). Como es sabido, la referida Ley Núm. 170 —en su Sec. 1.4 (3 L.P.R.A. sec. 2103)— establece que dicha ley se aplicará a "todas las agencias que no están expresamente exceptuadas" de las disposiciones de la misma. La Junta de Libertad bajo Palabra *no* es una de las agencias que está expresamente excluida de dicha ley. Cf. *Pagán Ramos v. F.S.E.*, 129 D.P.R. 888 (1992).

## II

En el presente caso resulta ser un hecho incuestionable que el Peticionario no acudió ante el Tribunal Superior de Puerto Rico en revisión judicial de la decisión mediante la

cual la Junta de Libertad bajo Palabra le revocó la libertad condicionada que él disfrutaba. Ello, no obstante, somos del criterio que en el presente caso existen "circunstancias extraordinarias" que nos mueven a resolver no sólo que resulta procedente la consideración del auto de hábeas corpus radicado, sino que procede declarar el mismo con lugar.

En primer lugar, la norma sobre revisión judicial que hoy implantamos no estaba, *naturalmente*, en vigor ni era del conocimiento del aquí Peticionario a la fecha en que la Junta de Libertad bajo Palabra le revocó la libertad condicionada que él disfrutaba. A esa fecha estaba únicamente vigente lo expuesto en *Román v. Delgado*, ante, a los efectos de que el recurso procedente en toda clase de situaciones lo era el recurso de hábeas corpus. Resulta obvia la injusticia que cometeríamos de exigirle lo que él desconocía.

En segundo lugar tenemos —ya en cuanto al lapso de tiempo en sí que el Peticionario dejó transcurrir antes de cuestionar judicialmente la decisión de la Junta— que el Peticionario siempre ha sostenido que, no obstante aparecer de la faz de la resolución que él fue notificado, él nunca recibió la resolución de la Junta mediante la cual se le revocó su libertad condicionada. Alega que de haberle sido notificada, él hubiera actuado prontamente respecto a la misma. De hecho, cuando finalmente fue arrestado y encarcelado el 8 de octubre de 1985 así lo hizo, radicando una moción de reconsideración ante la Junta. Dos (2) circunstancias abonan grandemente a su posición de que efectivamente ni él ni su abogado fueron notificados. El Lcdo. Enrique García García, miembro asociado de la Junta de Libertad bajo Palabra, declaró —durante la vista del hábeas corpus— que no podía precisar en qué fecha fue notificada a las partes dicha decisión. Por otro lado, resulta verdaderamente incomprensible el hecho de que, si dicha decisión fue notificada por la Junta en o alrededor de 21 de

junio de 1985, el Peticionario no fuera arrestado hasta el 8 de octubre de ese año, con el "agravante" de que éste continuó asistiendo durante ese período de tiempo a sus entrevistas con el oficial sociopenal Ravelo sin que nada ocurriera. Nos inclinamos a pensar, cuando menos, que la decisión de la Junta no fue notificada en la fecha que surge de la faz de la misma. No habiendo certeza sobre cuándo la misma fue efectivamente notificada, somos del criterio que no sería justo denegar la consideración del recurso de hábeas corpus radicado por el fundamento de que el Peticionario no recurrió al tribunal de instancia en solicitud de revisión judicial de la decisión emitida por la Junta.

En tercer lugar, un examen de la transcripción que se hiciera, la cual consta en autos, de la vista de revocación que se celebrara el 21 de mayo de 1985 ante el oficial examinador de la Junta, señor Grafals, demuestra que este no es un caso donde se ataque la determinación que en los méritos realizara dicha junta *a base de la adjudicación de credibilidad* que de la prueba presentada hiciera dicho organismo administrativo. *Por el contrario, el caso es uno de insuficiencia de prueba para sostener la decisión sobre revocación de libertad condicionada que realizara la Junta,* basada la misma en la determinación de hecho a los efectos de que el Peticionario mientras disfrutaba de su libertad condicionada "hizo uso de drogas narcóticas o estupefacientes y, en adición, su conducta en la comunidad fue impropia". Dicha determinación, como hemos visto, tiene como base unas manifestaciones que le hiciera la esposa del Peticionario al oficial sociopenal. No hay controversia sobre el hecho de que dichas expresiones efectivamente fueron hechas. Sucede, sin embargo, que la misma persona que las hizo declara luego bajo juramento que sus manifestaciones son totalmente falsas y producto de una "fabricación" de su parte con motivo de un arranque de celos. Seguramente esa fue la razón por la cual la Junta, el mismo 21 de mayo de 1985, ordenó la excarcelación del Peticiona-

rio; estaba probablemente consciente de que a base de esa prueba no resultaba procedente en derecho la revocación de la libertad bajo palabra que disfrutaba el Peticionario. Inexplicablemente, treinta (30) días más tarde la Junta cambió de opinión.

█ Somos del criterio que la decisión del referido organismo administrativo, a la luz de todo lo anteriormente expuesto, resulta ser una arbitraria, caprichosa, y carente totalmente de base en la prueba que desfilara ante el oficial examinador, lo que hace que la privación de la libertad que sufre el Peticionario sea una ilegal. Habiendo la Junta de Libertad bajo Palabra incurrido en un claro abuso de discreción al revocar la libertad condicionada que gozaba el Peticionario, *Román v. Delgado*, ante, procede declarar con lugar el recurso de hábeas corpus radicado. *Cf. Hoyos v. Tribl. Superior*, 80 D.P.R. 633, 644 (1958).([9])

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.

---

([9]) El resultado a que llegamos hace totalmente innecesario que discutamos el planteamiento del Peticionario a los efectos de que el procedimiento de revocación de la libertad bajo palabra que se siguiera en el presente caso no cumplió con los requisitos del debido proceso de ley por cuanto se violaron los términos y condiciones de la estipulación que suscribiera el Gobierno del Estado Libre Asociado de Puerto Rico en el año 1977 en el caso de *Montero Torres v. Hernández Colón*, Civil Núm. 75-828, ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico. Alega el Peticionario, en síntesis y en lo pertinente, que como consecuencia de la referida estipulación se exige de la Junta de Libertad bajo Palabra que notifique *personalmente* a la persona afectada con copia de su decisión *dentro* del término de veinte (20) días de haberse emitido la misma, y que, de así no hacerse, la Junta viene en la obligación de archivar el asunto.